210 A.2d 589.

THOMAS C. SHALVEY, JR., *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF WARWICK.

MAY 25, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Roberts, J.  The record returned to this court pursuant to a writ of certiorari issued under G. L. 1956, §45-24-20, discloses that in October 1962 an administrative officer of the city of Warwick, namely, the building inspector, issued four permits which purported to authorize the applicant therefor to erect a multifamily dwelling and to install heating and plumbing facilities therein located on certain house lots in the city of Warwick.  At the time the permits were

issued multifamily dwellings were a permitted use on the lots in question. On October 22, 1962 petitioners took an appeal to the zoning board from the issuance of each such permit. After conducting a hearing on the merits with respect to one such permit on December 6, 1962, the board continued hearing on the remaining appeals to January 15, 1963, reserving decision on the appeal that had been heard. On January 15, 1963 the petitioners filed with the board a motion to deny the permit issued in each case "On Ground Of Change In Zoning Ordinance." The board denied these motions after consideration.

At the same time, to wit, January 15, 1963, the board issued a decision in writing on each of the appeals pending before it, finding in each such decision that petitioners had not established any of the grounds upon which the appeals were originally based. The board also found that in issuing the building permit under consideration the building inspector had "acted within his power in issuing Building Permit No. C-09812 under the ordinances in effect at the time of the issuance of said permit; therefore, be it resolved that this appeal be denied on those grounds." The three remaining appeals were likewise denied for want of proof of the grounds on which they originally were taken and because "a building permit had been issued previously by the Building Inspector within his power under the ordinance in effect at the time of the issuance of said permit * * *." It is from these decisions of the board that petitioners now seek a review under the writ of certiorari provided for in the statute. Being of the opinion that the validity of the issuance of the building permit will, in effect, control our decision as to the validity of the issuance of the other permits here under consideration, we will, in discussing the issues raised, refer only to that permit, intending, however, that whatever conclusions are reached by us will apply to the issuance of the remaining permits challenged by petitioners.

Two facts essential to a determination of the issue here raised are not in dispute. The first is that at the time of the issuance of the permit the erection of dwelling houses providing for occupancy by two or three families was a permitted use on lots located in an A-7 district. The second is that subsequent to the issuance of the permit, to wit, on December 20, 1962, the city council enacted an amendatory ordinance wherein it provided that only dwellings to be occupied by one family could be erected on lots in such an A-7 classification. The date upon which this amendatory ordinance became effective is, in our opinion, without materiality in the circumstances of this case.

An examination of the record persuades us that the respondent board rested its decision on a conclusion that at the time the permit issued the use that was authorized therein was a permitted use under the ordinance and one to which the landowner was entitled as of right. The board made no finding that the landowner had, in reliance on the permit issued, proceeded to the construction of the buildings in question or to incur obligations relating to the use authorized in the permit. In these circumstances we can infer only that the board assumed that the issuance of the permit conferred upon the permittee a vested right to make such a use of the land and that such a right, once acquired, could not be restricted or revoked by a subsequent amendment to the ordinance prohibiting the use authorized in the permit. This is a misconception of the law relating to the viability of such permits.

This court has not passed on the question of whether an amendment to a zoning ordinance that eliminates in a particular district a use that theretofore had been a permitted use, to which a landowner was entitled as of right, operates to restrict or revoke a permit authorizing the prior use issued when that use was lawful. This issue was present in two cases heard by this court but was decided in neither of them.

In *Harrison* v. *Hopkins*, 48 R. I. 42, a building permit had issued authorizing the erection of a two-family dwelling, a permitted use at the time of the issuance thereof. Subsequently an amendment to the ordinance eliminated such use, and, construction being only partially completed, the building inspector revoked the permit on the ground that the authorized use had become illegal. This court concluded that a refusal to permit the owner to complete the dwelling constituted unnecessary hardship and proceeded to grant his prayer for a variance without deciding the question of the effect of the amendment of the ordinance on the validity of the permit. In *Elmcrest Realty Co.* v. *Zoning Board of Review*, 78 R. I. 432, permits issued authorizing the erection of dwelling houses on three undersized lots, which were revoked by the board of review on an appeal taken from the issuance thereof. This court held that the appeal was not taken within a reasonable time because substantial construction work on the dwellings had been completed at the time it was taken. The court, applying the doctrine of laches by analogy, reversed the board's decision, preserving the validity of the permits that had been illegally issued in the first place.

However, we consider these decisions significant because the court rested the decision in each on the fact that construction undertaken in reliance upon the permits constitutes a factor to be given weight on the question of whether the permittee had acquired an equity in the use authorized in the permit that justified its preservation from revocation by reason of the amendment to the ordinance in the *Harrison* case, or its unlawful issuance in the *Elmcrest Realty Co.* case. Recognition of this factor, in our opinion, suggests this court's acceptance of the proposition that the holder of a permit authorizing a use lawful when it was issued may, by acting in good faith in reliance thereon, acquire an interest in the use authorized which may not be

divested or impaired by a subsequent amendment to the zoning ordinance making that use unlawful. There remains, however, the important question as to the circumstances under which the rule becomes effective.

There appears to be considerable confusion among the cases which purport to pass on the question as to when one to whom a building permit was lawfully issued for a use then permitted under the zoning ordinance acquires a vested interest in the use therein authorized that will withstand the operative effect of subsequent legislation amending the ordinance so as to prohibit that use. The consensus, however, is that where one has lawfully obtained such a permit authorizing a permitted use and proceeds in good faith to initiate construction in reliance on the permit or to incur expenditures for such construction, he acquires a right to the authorized use that is immune to impairment or revocation by the enactment of an amendatory ordinance excluding that use. The right so acquired and protected is described in *Eggebeen* v. *Sonnenburg,* 239 Wis. 213, as operating to exempt the permittee's property from rezoning once he initiates construction under the permit. Whether this is an apt concept of the nature of the right that accrues to the permittee, it reflects the nature of the protection that the permittee should in justice and equity be given.

The basic rule above stated has been modified in several well-reasoned opinions, the courts holding that merely to obtain a building permit and, acting thereunder, make expenditures or incur obligations that in character are preparatory to construction will not suffice to immunize the permit against impairment or revocation by a subsequent ordinance changing the use authorized in the permit. *Brett* v. *Building Commissioner,* 250 Mass. 73. The courts that subscribe to this view clearly do not accept the proposition that the permit is immunized from revocation merely on

the basis of gestures in reliance thereon or, perhaps better stated, in an absence of circumstances which demonstrate conclusively the good faith of the permittee. They appear to require substantial action in good faith on the part of the permittee pursuant to the permit. *Parker-Quaker Corp.* v. *Young,* 23 Conn. Sup. 461.

The view to which these latter courts subscribe is aptly stated in *Hertrick Appeal,* 391 Pa. 148. There the court, after holding that an application for a building permit may be refused if at the time thereof an amendment was pending that would alter the terms of the ordinance so as to prohibit the use for which the permit is sought, went on to say at page 153: "Even when an applicant is issued a permit, unless he proceeds in good faith to incur substantial obligations in reliance thereon, the permit may be vacated or revoked because of subsequently adopted amendments to the zoning ordinance which prohibit the proposed use of the land." It is clear that under the rule thus stated only *substantial* performance in carrying out the authorization granted in the permit will immunize it from the adverse effects of a subsequent amendment.

The proposition thus stated has been declared to be the rule in New Hampshire. In *Winn* v. *Lamoy Realty Corp.,* 100 N. H. 280, the court, accepting the view that a permittee may acquire an interest in the authorized use that will preclude revocation by a subsequent amendment of the zoning ordinance, said at page 281: "It seems to us that the better view and the one more likely to produce justice is that where the owner, relying in good faith upon a permit and before it has been revoked, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, the permit may not be cancelled." The court indicates that *substantial* performance under the permit must be established if the permit is to be immunized against subsequent change. In

our opinion the rule thus stated promotes justice by protecting the interests of a permittee who has acted under a permit in good faith, but withholding protection from permits where good faith does not appear, and thus protects the public interest in an effective regulation of land uses.

We are of the opinion that the rule set out in the Pennsylvania and New Hampshire cases is sound and that in its application it would serve both the interest of the landowner in making an appropriate use of his land and the interest of the public in the effective regulation of land uses. We are persuaded, however, that the rule would be susceptible of more effective administration when the interests of the owner and the public conflict if it be applied in the light of such equities as may have accrued to the parties in the circumstances. In *Morris* v. *Postma*, 41 N. J. 354, 362, the court, quoting from *Sautto* v. *Edenboro Apartments, Inc.*, 69 N. J. Super. 420, said: " "* * * where a property owner has been granted a building permit for a use valid when granted, the municipality nevertheless has a right to adopt later zoning or other police power legislation restrictive of the enjoyment of the permit already issued, but not where the permittee in reliance upon the permit has made substantial investment or expenditure, or where the extent of his reliance and the nature of the behavior of the parties show a balance of the equities strongly in favor of the permittee as against the general public represented by the municipal authorities.' "

It is then our opinion that building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction. Clearly

our conclusion in this respect obligates zoning boards of review, when confronted with this question on an appeal from the issuance of such a permit under §45-24-19a, to determine in an exercise of the fact-finding power conferred upon them by the enabling act the extent to which substantial performance was undertaken in reliance on the permit in good faith. It does not appear that the respondent board made such finding in this case.

The petitioners contend also that the permit should be revoked because it was issued contrary to the provisions of law. While there is some authority to the contrary, it is the generally accepted view that an appropriate municipal officer will not be estopped from nullifying such permit issued illegally even though the holder thereof has proceeded to act pursuant to the permit. A number of cases in which these views are discussed are collected in an annotation in 6 A.L.R.2d 960, 966. In the circumstances of the instant case, however, we are unable to agree that the permit was issued illegally.

The petitioners contend, first, that the issuance was illegal in that the building inspector did not, before issuing the permit, submit the application therefor to the planning board for its approval. The enabling legislation authorizing municipalities to establish planning boards and to regulate the subdivision of land is contained in G. L. 1956, chap. 23 of title 45. In our opinion, nothing in that statute either by way of express terms or necessary implication requires an inspector of buildings to make such a submission to the planning board prior to the issuance of a permit. See *Fitzgerald* v. *Board of Review*, 99 R. I. 221, 206 A.2d 635.

Neither does the record disclose that petitioners have proved that the provision of an ordinance of the city enacted pursuant to the statute referred to above requires the inspector to submit an application for a building per-

mit to a planning board or in any way limits the authority
of that officer to issue such permits in an exercise of his
discretion. In our opinion, were such an ordinance proved,
provisions thereof which purported to confer authority of
this kind on a planning board would be ineffective, it being
well settled that the powers of a regulatory agency of
this type are limited to those conferred in the enabling leg-
islation and may not be enlarged or restricted by legisla-
tive action on the part of a municipality. See *Mello* v.
*Board of Review,* 94 R. I. 43, 177 A.2d 533.

We have found it difficult to ascertain the precise thrust
of the second contention of petitioners as to the illegal is-
suance of the building permit. The record discloses that
the building permit was issued to Albert H. Shackleton, Jr.,
authorizing the erection of a three-family house on a lot
located at 218 Partition street. Shackleton had testified
that the lot in question was owned by Cleveland Realty,
Inc., a corporation in which he and his wife were the sole
stockholders and of which he is president and general man-
ager.

The petitioners, as we understand them, argue that the
permit issued illegally because it does not bear on its face
the name of the owner of the land, that is, Cleveland Realty,
Inc. They direct our attention to no authority holding
that a building permit, to be valid, must be issued to the
owner of the pertinent land. Nothing appears in the rec-
ord to establish that Shackleton did not have an interest
in the land sufficient to entitle him to apply for a building
permit under the rule stated in *Ralston Purina Co.* v. *Zon-
ing Board,* 64 R. I. 197.

In several cases we have held that ownership of land
which constitutes the subject matter of some dispute is es-
sential to one's right to obtain the relief sought. In *Sun
Oil Co.* v. *Macauley,* 72 R. I. 206, we held that a conditional
agreement for the purchase of land did not vest a sufficient

interest in a petitioner for a writ of mandamus to entitle it thereto, such an interest being insufficient to establish that the petitioner had a "clear legal right to have the act done * * *." In *Tripp* v. *Zoning Board of Review*, 84 R. I. 262, we held that one who held only an option to purchase property did not possess any incident of ownership that in contemplation of law made him a subject to the unnecessary hardship that would entitle him to the grant of a variance.

In the instant case the application of Shackleton for the permit was granted, and, therefore, the question as to whether he was a party aggrieved by the decision is not raised, and hence with respect to him ownership was without materiality in the cause. See *Dimitri* v. *Zoning Board of Review*, 61 R. I. 325. In short, the posture in which this case is presented to this court is such that the question of whether Shackleton was entitled as a matter of right to the issuance of the permit does not appear to be in issue. We have been unable to determine from the record that he did not have an interest that would entitle him to the permit, and the burden is on the petitioners to establish the absence of such entitlement.

In all the circumstances we are of the opinion that the ends of justice will best be served by a remand of this case to the respondent board for a determination, in an exercise of its fact-finding power, of the extent, if any, to which the applicant here, acting in good faith and in reliance on the permit, undertook to initiate construction of the building authorized therein and to decide the appeal of the petitioners in accordance with this opinion.

The petition for certiorari is granted, the record of the decision denying the petitioners' appeals is quashed, and the records certified are sent back with instructions to the board to reconsider these appeals in accordance with this opinion, reserving to the board the right to take further

evidence if it so desires. Jurisdiction over the petition for certiorari is retained, however, for such further review by this court of the action of the respondent board on this application as may be necessary.

*Hendel, Strauss & Surdut, Raymond J. Surdut,* for petitioners.

*James R. Morriss,* City Solicitor of the City of Warwick, for respondent.

*Temkin, Merolla & Zurier, Amedeo C. Merolla, Carl B. Lisa,* for remonstrants.