218 A.2d 480.

FREDERICK TANTIMONACO *et ux. vs.* ZONING BOARD OF
REVIEW OF THE TOWN OF JOHNSTON.

APRIL 11, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

PAOLINO, J.   This is a petition for certiorari to review the
action of the respondent board granting the applicants' re-
quest for approval of a gasoline filling station on certain
land owned by them in a business D district.   In compli-
ance with the writ the pertinent records have been certified
to this court.

We note at the outset that this case does not involve an
application for an exception or a variance, but rather an
application for a building permit for a permitted use under

sec. VIII of the zoning ordinance of the town of Johnston, as amended, which provides in pertinent part as follows:

> "In a Business D District the following regulations shall apply:
>
> "A. Business D District Uses.
>
> > "A building may be erected, altered, or used, and a lot or premises may be used for any of the following purposes and for no other:
> >
> > "* * *
> >
> > "6. Automobile Salesrooms, Garages or Filling Stations upon approval of the location and layout thereof and the plans by the Zoning Board of Review."

On March 29, 1965, pursuant to the provisions of sec. VIII, A.6, the applicants filed an application for approval of the location and layout and the plans for construction and operation of a gasoline filling station on the land in question. On April 29, 1965 the board held a hearing thereon and on May 14, 1965 rendered a written decision granting the approval sought, subject to certain safeguards and conditions made part of the board's decision. Thereafter, on June 8, 1965, petitioners filed the instant petition challenging the validity of the board's action.

On June 14, 1965, while the instant petition was pending in this court awaiting hearing, the town council amended its zoning ordinance and rezoned the area in which the applicants' land was located from a business D district to a residence A district in which a gasoline station is not a permitted use.

At the time the application was filed, heard and decided by the zoning board, a gasoline station was a permitted use in a business D district under sec. VIII, A.6, "upon approval of the location and layout thereof and the plans by the Zoning Board of Review." As we have already stated, this case does not involve a special exception or a variance, but rather a building permit. Under the existing ordinance the

applicants were entitled to the proposed use as a matter of right upon approval of the location and layout of the structures on their land and approval of their plans by the board —approval which could not be arbitrarily withheld. See *MC. and S. Realty, Inc.* v. *City Council,* 88 R. I. 138.

The posture in which the case reaches us presents for our consideration the effect of the amendment on June 14, 1965. We note here that with the agreement of the parties in open court, we ordered the record to be supplemented by a duly-authenticated copy of the amendment of the ordinance. See *Najarian Realty Corp.* v. *Zoning Board of Review,* 99 R. I. 465, 208 A.2d 528.

Only recently we have on two occasions considered "the question of whether an amendment to a zoning ordinance that eliminates in a particular district a use that theretofore had been a permitted use, to which a landowner was entitled as of right, operates to restrict or revoke a permit authorizing the prior use issued when that use was lawful." See *Shalvey* v. *Zoning Board of Review,* 99 R. I. 692, 695, 210 A.2d 589, 591.

In *Najarian, supra,* which also involved a gasoline station, the application was filed at a time when a gasoline station was a permitted use under the then ordinance in a residence B district with the approval of the board of review. However, before the board rendered its decision denying the application, the city council amended the ordinance eliminating a gasoline station as a permitted use in a residence B district. We held in that case that by the adoption of the amendment "the petitioner's application was rendered abortive and any decision of the board thereon either granting or denying it would be null and void." The decision in *Najarian, supra,* was filed on March 30, 1965.

On May 25, 1965, *Shalvey, supra,* was decided by this court. This case differed in some respects from *Najarian* factually. In *Shalvey, supra,* the building inspector issued

four building permits in October 1962 for multifamily dwellings on certain lots in Warwick which were permitted uses under the ordinance as it then existed. On October 22, 1962 certain remonstrants appealed from the building inspector's action to the zoning board. The board heard one of the appeals on December 6, 1962, reserved decision thereon, and continued the remaining appeals to January 15, 1963. In the meantime, on December 20, 1962, the city council amended the ordinance by providing that only dwellings to be occupied by one family could be erected on the lots in question. Thereafter, on January 15, 1963 the zoning board rendered a written decision upholding the issuance of the permits in question substantially on the ground that the building inspector had acted within his power under the ordinances in effect at the time of the issuance thereof.

A comparison of the travel in *Najarian* and *Shalvey, supra*, shows that in each case the zoning board acted after the amendment of the pertinent ordinance, but that in the former the board denied the application whereas in *Shalvey, supra*, the board gave no effect to the amendment and upheld the building inspector. We point out these differences only to indicate the different postures in which these cases arise.

In *Shalvey, supra*, Mr. Justice Roberts, presently chief justice, writing for a unanimous court, carefully reviewed this problem in depth. After discussing prior decisions of this court where this issue was present but not decided, see *Harrison* v. *Hopkins*, 48 R. I. 42, and *Elmcrest Realty Co.* v. *Zoning Board of Review*, 78 R. I. 432, the court reasoned that the determination of this problem should depend upon the equities of each case and the good faith of the permittee.

The court said in *Shalvey, supra*, 210 A.2d at page 592:

"Recognition of this factor, in our opinion, suggests this court's acceptance of the proposition that the holder of a permit authorizing a use lawful when it was issued may, by acting in good faith in reliance

thereon, acquire an interest in the use authorized which may not be divested or impaired by a subsequent amendment to the zoning ordinance making that use unlawful. There remains, however, the important question as to the circumstances under which the rule becomes effective."

After reviewing decisions in other jurisdictions involving this question, we held that:

"* * * building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction. Clearly our conclusion in this respect obligates zoning boards of review when confronted with this question on an appeal from the issuance of such a permit under §45-24-19, subd. a, to determine in an exercise of the fact-finding power conferred upon them by the enabling act the extent to which substantial performance was undertaken in reliance on the permit in good faith. It does not appear that the respondent board made such finding in this case."

In *Shalvey, supra,* we returned the cause to the zoning board for such fact finding by it.

Such is the law in this state as we approach a determination in the case at bar. Although, as we indicated in *Shalvey,* 210 A.2d at page 591, the date upon which the amendment became effective is not material in the ultimate decision of this problem, it is interesting to point out again, merely as a factual matter, that in the case at bar the amendment was adopted and became effective after the zoning board had given its approval in accordance with the existing ordinance. For the sake of accuracy we point to another difference factually between *Shalvey* and the case at bar. In *Shalvey* the applicant was required to go to the building inspector in the first instance under the Warwick

ordinance, whereas under the ordinance in the instant case the applicants were required to go to the zoning board for its approval before becoming entitled to the building permit.

Notwithstanding these factual differences, which are really differences without a material distinction, we hold that our decision in *Shalvey, supra,* governs the instant case. There is no evidence in the record indicating what substantial obligations the applicants incurred in good faith in reliance on the board's approval. But there is evidence that plans and specifications were presented to the zoning board and that inferentially the applicants had entered into some contractual relationship with a potential lessee. In *Shalvey, supra,* we recognized that even when an applicant acquires a permit which is valid when issued, "unless he proceeds in good faith to incur substantial obligations in reliance thereon, the permit may be vacated or revoked because of subsequently adopted amendments to the zoning ordinance which prohibit the proposed use of the land."

We believe that the rationale of the court's decision in *Shalvey* implicitly encompasses another aspect of this problem which was not expressly referred to in that case, but which recognizes the realities of these situations and is in line with the better reasoning. We refer specifically to expenses incurred in preparing for the issuance of a permit. For example, in the case at bar there was no need of presenting such evidence to the zoning board under the existing ordinance when it heard and granted the application. In 1 Yokley, Zoning Law and Practice (3d ed.), §9-5, at 409, the author states:

> "Current trends in the decisions indicate that rights existing under an ordinance may not be swept aside by a subsequently enacted zoning ordinance, where, in reliance on the existing ordinance, expenses are incurred in preparing for the issuance of a permit."

He cites *Nott* v. *Wolff*, 18 Ill.2d 362, for the proposition that:

"* * * where a 35-year lease was executed on property to be utilized for a motel and architects were employed to prepare plans and specifications and proceedings were begun to secure a permit, there had taken place such a change in position based on the existing ordinance as would authorize a writ of mandamus to compel the issuance of the permit, notwithstanding the subsequent enactment of an ordinance that would have had the effect of prohibiting the use of the property for a motel."

In our judgment the reasoning of the Illinois court is consistent with the equitable consideration inherent in our decision in *Shalvey, supra.*

In the interest of justice it is our judgment that this cause should be returned to the respondent board for findings of fact in accordance with this opinion, in the exercise of its fact-finding power under P. L. 1952, chap. 3010, sec. 9(a), and to decide the appeal of the petitioners in accordance with this opinion.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the records certified to this court are ordered returned to the board with instructions to reconsider the application in accordance with this opinion, reserving to the board the right to hear further evidence after giving the same kind of public notice as is required for a hearing on an original application, as well as due notice to the parties in interest. The board shall fix a reasonable time for such hearing and shall decide the application within a reasonable time. Jurisdiction for review of the board's subsequent decision is hereby retained in this court, which jurisdiction may be invoked within thirty days after the filing of any new decision in the office of the board.

*Edmund Wexler,* for petitioners.

*John P. Bourcier,* Town Solicitor, *Joseph A. Bevilacqua, Louis A. Petrarca, Jr.,* for respondent.