DECISION
This is a civil action in which the plaintiff, Town of Foster, seeks a judgment of this Court against the defendants, John and Bertha Hawkins, ordering them to close the year-round operation of their campground. It seeks that order because it alleges that year-round operation of the campground is a public nuisance, violates the Town's zoning ordinance, violates the Town's house trailer and mobile home ordinance of 1960, and violates the Town's trailer ordinance of 1965. The defendants deny that their use of their land is a public nuisance, that they have violated the zoning ordinance, that they are operating a prohibited house trailer park or colony under the 1960 ordinance, or a prohibited mobile home park or trailer park under the 1965 ordinance. They have also alleged that the issues raised in this action are barred by the application of the doctrine of resjudicata or collateral estoppel, because they were or could have been adjudicated in the case of John Hawkins v. Town ofFoster, C.A. No. PC 91-8339, in which final judgment was granted for the plaintiffs enjoining enforcement by the Town of its campground ordinance.
I
Since 1968 the defendants have operated what they call a campground, named "Whippoorwill Hill Family Campground," in the Town of Foster. Until 1990 they shut down from October until April. Since 1990 they have permitted occupancy of some trailers on their premises throughout the year, although they grant no leases and charge monthly rentals. Each trailer occupied on a year-round basis is served by sewage disposal and some other utilities. Each trailer also has varying degrees of protection against cold weather. No such trailer is rendered totally immobile, although some are elevated on blocks or jacks. They are all generally smaller than trailers associated with mobile homes or house trailers. None of the occupants claim to be residents of the Town of Foster, and each of them identifies some other dwelling-place than the campground as a home or permanent residence.
In January 1991 the Town attempted to enforce a campground ordinance, adopted in 1965, which prohibited campground operation during the month of January. The Town's council attempted to levy a fine of $100 against the defendants for violation of the ordinance. On August 8, 1991 the Town purported to amend the ordinance to require that licensed campgrounds be closed during January and February and to increase the penalty for violation. Accordingly, the defendants were issued a Town campground license valid only from March 1 through December 31, 1992. The defendants sought and obtained a permanent injunction from this Court barring the Town from enforcing the ordinance so as to prohibit year-round operation of the campground.
Thereupon, the Town commenced this action.
II
It is undisputed that, when the defendants first obtained a Town campground license in 1968, the operation of a campground was a permitted use of their land. At some time thereafter operation of a licensed camp area became a use permitted only by special exception. The defendants' campground was generally operated during the months of April through September until 1990.
The current zoning ordinance provides in Article V, Nonconforming Use, Section 10, Change of Use:
 "A nonconforming use may be changed to a conforming use or may be changed to a different nonconforming use by special use permit; if so changed, the alteration shall more closely adhere to the intent and purpose of this Ordinance."
The Town argues that the change in the period of operation from six months to year-round constitutes a prohibited change of use. It cites Santoro v. Zoning Board of Review of the Town ofWarren, 93 R.I. 68 (1961) for the proposition that an increase in the intensity of a nonconforming use can constitute a "change" of use prohibited by the zoning ordinance. It is clear thatSantoro dealt with a physical extension of the nonconforming use. At best, what is at stake in this case is a temporal extension of a permitted nonconforming use. The zoning ordinance in Section 11 of Article IV specifically permits the spatial enlargement of pre-existing uses, which are not specifically prohibited anywhere in the Town under Section 14, Prohibited Uses of Article IV of the ordinance. Since a spatial enlargement is not a change of use, it makes no sense that a temporal one would be. Under those circumstances, reliance on Santoro, supra, is misplaced.
The Town urges, nonetheless, that the year-round occupancy of some of the trailers on the defendants' premises constitutes the operation of a house trailer park or colony, or the use of house trailers/mobile homes (except as provided for as a permitted wholesale business in Section 9 of Article IV), in violation of the explicit prohibitions in Section 14 of Article IV. While "house trailer park or colony" is not defined in the zoning ordinance, Section 9 of Article VI Supplementary Regulations does provide in part:
 "House trailers or mobile homes, so-called, whether on wheels, temporary foundations or permanent foundations shall not be permitted within the Town of Foster, except as follows:
trailers that were lawfully located in said Town as of July 1, 1971, and replacements for such trailers; camping trailers, so called; and trailers when used as a temporary substitute residence following damage, arising from fire, windstorm or sudden casualty to a permanent residence which has made such permanent residence uninhabitable."
Neither "house trailer," "mobile home," nor "camping trailer" is defined in the zoning ordinance itself. The Town argues that the Court should look for definitions of those terms to other ordinances.
On July 7, 1960 the Town Council adopted an ordinance entitled "An Ordinance Regulating the Use and Location of Mobile Homes and House Trailers, when Stationary, within the Town of Foster, Rhode Island and Being Used for Dwellings, Permanent and Temporary" (the 1960 Ordinance). Section I of the 1960 ordinance contains the following definitions:
 "d) Mobilehome shall be deemed to be a unit or any vehicle used for sleeping or living quarters, permanent or temporary, which is equipped with running water, bath facilities, flush toilet, and appropriate sanitary conditions.
 e) Trailer shall mean any house, car, or automobile trailer, other than a mobile home, used for or adaptable for use as living quarters, permanent or temporary.
 f) Mobilehome Park or Trailer Park shall mean privately owned land upon which two or more mobilehomes or trailers are or are intended to be used and occupied as sleeping or living quarters, permanent or temporary." (Emphasis provided.)
On May 6, 1965 the Town Council adopted an ordinance entitled "Ordinance Regulating Trailers in the Town of Foster." (the 1965 Ordinance) In that ordinance "trailer" is defined as follows:
 "Trailer shall mean any portable structure, mobilehome, so-called, or vehicle designed to be drawn by vehicles or self-propelled and occupied as a dwelling or used for sleeping purposes."
The 1960 ordinance prohibits any person from maintaining or operating a mobile home or trailer park without having first obtained a license from the Town Council. Apparently, until this action was commenced in 1993 the Town had never applied this requirement to the defendants, although nothing in the 1960 ordinance exempts camping trailers or campgrounds from the definition of "trailer park." The 1965 ordinance prohibits the location of any trailer for use as a "dwelling unit" within the Town without an installation permit from the Town Council. "Dwelling unit" is not defined in this ordinance, and no exception is provided for camping trailers or trailers used as dwelling units in a campground. As with the 1960 ordinance this ordinance, too, has never been applied by the Town to the trailers located on the defendants' campground until this action was commenced.
The current zoning ordinance defines "dwelling unit" as follows in Article II, Definitions:
 "Dwelling Unit — A structure or portion thereof providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation and containing a separate means of ingress and egress."
This Court finds that the structures occupied by persons on the defendants' premises are trailers. They are a form of "house trailer" called "camping trailers." As such they are exempt by specific exception from the prohibition in the zoning ordinance. Under the circumstances, since "camping trailers" are not forbidden as "house trailers," the Court finds that a campground is not a "house trailer park or colony."
The Court further finds that, since two or more "trailers," as defined, are used as sleeping or living quarters on the defendants' land, the defendants do maintain and operate a trailer park, as defined in the 1960 ordinance.
The Court finds that the trailers on the defendants' premises are dwelling units, as defined by the zoning ordinance, and as mentioned in the 1965 ordinance. Accordingly, the defendants are locating trailers for use as dwelling units within the Town of Foster.
The Court further finds that neither the 1960 ordinance nor the 1965 ordinance has reference to the period of time during which the trailers are "used as sleeping or living quarters" on the defendants' land, or are used as "dwelling units." Accordingly both ordinances apply to the defendants if the trailers are occupied for any period, whether or not year-round.
Accordingly, the defendants are subject to the licensing requirements and other regulations contained in both ordinances, irrespective of whether or not their operation is year-round.
Although the defendants do not raise the defense of estoppel directly, the Court is satisfied that the defendants have not demonstrated that they have in good faith specifically relied to their detriment on the Town's failure to enforce these ordinances. Cf. Shalvey v. Zoning Board of Review of the Cityof Warwick, 99 R.I. 692, 210 A.2d 589 (1965). Mere delay in enforcement of the public's interest preserved by these ordinances, standing alone, is no defense against their enforcement by the government now. See O'Reilly v. Town ofGlocester, 621 A.2d 697, 703 (R.I. 1993)
The Court finds that the occupation of trailers as dwelling units on the defendants' land does not constitute a public nuisance.
III
This case would now be at an end and in order for injunctive relief for the Town against these defendants, but for the nature of the injunction the Town requests. The Town does not ask that the defendants be enjoined from continuing to operate a trailer park or from locating trailers as dwelling units on their land without appropriate licenses and permits. It asks that they be enjoined from year-round operation of their campground.
That was precisely the relief which was denied in this Court when the Town sought to enforce its campground ordinance. It is no wonder that the defendants urge that the plaintiff is collaterally estopped from asserting the claims it does in this case, or that the adjudication in the prior proceeding between these parties in this Court is res judicata of the Town's claims.
The prior case involved only the campground ordinance and its prohibition against year-round operation, as applied to these defendants, plaintiffs in the earlier case. The Town failed to raise any issue that the defendants' operation of their campground, whether or not year-round, violated any other ordinances, such as the zoning ordinance, the trailer park ordinance of 1960 nor the trailer licensing ordinance of 1965.
The closely-related doctrines of res judicata and collateral estoppel were recently analyzed comprehensively in E.W. Audet Sons, Inc. v. Firemen's Fund Insurance Company of Newark, NewJersey, 635 A.2d 1181, 1186 (R.I. 1994). The doctrine of res judicata bars re-litigation of any issues that were raised orcould have been raised in prior litigation between the same parties resulting in a final judgment. Collateral estoppel prohibits re-litigation in a different claim of issues that wereactually litigated in a prior action resulting in a final judgment.
Since the application of the 1960 ordinance and the 1965 ordinance was not an issue actually litigated, either expressly or by implication, in the earlier action the doctrine of collateral estoppel will not apply. The question then remains whether these claims are barred by the prior judgment enjoining enforcement of the campground ordinance to the extent it prohibited year-round operation. The answer to that question depends on a construction of R.Civ.P. 13(a). This Court has already ruled on the defendants' motion to dismiss this action that the Town's claims are not compulsory counterclaims. That ruling is the law of this case. No reason appears to justify any change in that ruling on the basis of the expanded record, since these claims do not arise out of the same transaction or occurrence as the basis for the claim asserted by the plaintiffs in the prior action. The "transaction or occurrence" which is the basis for this lawsuit is the defendants' failure to comply with two ordinances, not their year-round operation of their campground.
Accordingly, the Court declines to grant the specific relief sought by the Town to bar the defendants' year-round operation in violation of the 1960 and 1965 ordinances. Nevertheless, as "other and further relief," as requested by the Town, the Court will enjoin further operation and maintenance of a trailer park by the defendants on their land and from the location of trailers for use as dwelling units on their land without appropriate licenses as provided by the ordinances.
The Town will present a judgment for entry upon five business day's notice to the defendants.