DECISION
Before this Court is the appeal of Michael J. Miale, (hereinafter "Plaintiff") from a May 20, 1993 decision of the Johnston Zoning Board of Review (hereinafter "Board") denying Plaintiff a variance to build a single family house on a substandard lot in the Town of Johnston. Jurisdiction in this Court is pursuant to G.L. 1956 (1988 Reenactment) § 45-24-20.
Facts/Travel
The property presently at issue is designated as three recorded lots numbered 352, 353, 354 as shown on plan of lots at Olneyville Terrace, belonging to J.W. Wilbur, A.L. Eliot, surveyor, dated August 31, 1907, filed with the Johnston Town Records on Plat Card 75 (hereinafter Lots 352, 353, 354) and located on Hillcrest Avenue in Town of Johnston. See Plaintiffs Brief, Exhibit 1.[1] Together Lots 352, 353, and 354 have a total area of 9180 square feet.
In 1986, Joseph Marrapese and Angelina Marrapese, his wife, transferred to Frank M. Miale by warranty deed a total of six (6) recorded lots, the three (3) lots at issue, Lots 352, 353, 354, along with three (3) abutting recorded lots numbered 355, 356, 357 as shown on plan of lots at Olneyville Terrace, belonging to J.W. Wilbur, A.L. Eliot, surveyor, dated August 31, 1907, filed with the Johnston Town records on Plat Card 75 (hereinafter Lots 355, 356, 357).[2] See Plaintiff's Brief, Ex. 3. Lots 355, 356 and 357 have a total area of approximately 10,260 square feet. See Plaintiff's Brief, Ex. 8. Thereafter, on October 31, 1986, Frank M. Miale transferred these six (6) recorded lots, Lots 352, 353, 354, 355, 356 and 357, to Sadie F. Miale by warranty deed. See Plaintiff's Brief, Ex. 4. On June 1, 1988, Sadie Miale transferred Lots 352, 353 and 354 to Plaintiff by quitclaim deed and, immediately thereafter in a separate quitclaim deed, transferred Lots 355, 356 and 357 to Plaintiff.See Plaintiff's Brief, Exhibits 5 and 6.
In 1992, Plaintiff appeared before the Johnston Zoning Board of Review with an application for an exception or a dimensional variance from the zoning ordinance so that he could build a single family house in a R-15 zoning district on Lots 355, 356 and 357 which contained a total of 10,268 square feet.[3] An R-15 zoning district requires a residential use on a lot size not less than 15,000 square feet. In support of this request and in compliance with the zoning statute, Plaintiff submitted a list of abutting owners within a 200' radius of the subject property which included Plaintiff's own name as the owner of Lot 482 on Assessor's Plat number 12. (See List of Abutting Owner's within 200' Radius of AP 12 Lot 96, p. 1). In a decision dated August 27, 1992, such variance was unanimously granted by the Board.See Johnston Zoning Board of Review Decision, dated August 27, 1992. In support of its decision the Board enumerated the following reasons:
 1. The public convenience and welfare will be substantially served.
 2. It will be in harmony with the general purposes and intent of this ordinance.
 3. It will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community.
 4. The appropriate use of neighboring property will not be substantially or permanently injured.[4]
Lots 355, 356 and 357 were then transferred to Thomas H. Mitson by a Warranty Deed on November 2, 1992. See Plaintiff's Brief, Ex. 10.
On March 31, 1993, Plaintiff submitted an application for a dimensional variance for Lots 352, 353 and 354 which contained a total of 9180 square feet. In such application, Plaintiff sought to again secure permission to build a single family house in a R-15 zoning district with inadequate square footage. That application was before the Board on May 20, 1993 at which time it was denied with the Board holding that Plaintiff created his own hardship by subdividing lots which were substandard and had previously merged.
Mr. Najarian, the Board's chairman, stated in pertinent part:
 "The reason being, for the record, on June 2, 1988, you reduced and created this Lot. It was an illegal act after 1979."
Transcript of Zoning Board of Review Meeting of May 30, 1993, page 2. During such hearing, Plaintiff was denied the opportunity to withdraw his application in order to speak to his attorney on this issue.
The instant appeal followed.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D) which provides:
 45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a Justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P.Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
Merger
The concept of merger requires that contiguous nonconforming lots in common ownership be combined to form a conforming lot.See Skelley v. Zoning Board of Review, 569 A.2d 1054 (R.I. 1990). Article X of the Johnston Zoning Ordinance provides for the merger of substandard lots that are contiguous and share ownership. That Article states in pertinent part:
 Where no adjacent lot is in the same ownership at the time this amended chapter becomes effective, so as to enable the formation of a larger lot, an existing lot shown on a plat duly recorded in the office of the town clerk prior to January 6, 1953 which fails to meet either the minimum frontage requirements or minimum area requirements, or both, of this chapter, may be used for a one-family dwelling in an R-40, R-20, R-15, R-10 and R-7 District. Where land adjacent to such a lot is in the same ownership, the exemption of the previous sentence shall not apply. If adjacent land in the same ownership is not sufficient to meet the minimum frontage requirements or minimum area requirements, or both, then the largest area and frontage which the adjoining common ownership make possible shall be provided.
However, relief is provided for a substandard lot with no contiguous common ownership in existence prior to the effective zoning ordinance. Such lot may be put to any use permitted in its zoning district. Such Article also states that:
 No parcel, tract or lots of land contiguous to each other and under single ownership shall be subdivided in a manner where the lot width or area shall be below the requirements fixed by this chapter.
See Johnston Zoning Ordinance, Article X. Both portions of the Johnston Zoning statute are unambiguous and, as such, should be applied literally and not expanded or construed.
The Board correctly found that Lots 352, 353, and 354 were merged with Lots 355, 356 and 357 when plaintiff received them in 1988 pursuant to Art. X of the Johnston Zoning Ordinance. In fact, such lots had merged at least as far back as when the six parcels were transferred from Joseph and Angelina Marrapese to Frank M. Miale because such lots were contiguous nonconforming lots in common ownership. Such lots continued to be merged after the transfer to Sadie Miale. Further, as each of the six lots consisted of approximately 3,000 square feet, there was no way to divide any of the lots without creating a substandard lot and violating the statute. Accordingly, Sadie Miale's attempt to transfer the lots in groups of three (3) to Plaintiff was ineffective. As such, the six lots were merged prior to and during Plaintiff's ownership. However, such lots were "unmerged" by the action of the Johnston Zoning Board when it granted the variance on Lots 355, 356 and 357 in its August 27, 1992 decision. As such decision was not appealed and became final, the doctrine of administrative finality prevents this Court from going back and reversing or modifying same.
Equitable Estoppel
Equitable estoppel has been used in the zoning context, but not often. The Supreme Court of this state has held that the granting of equitable relief in a zoning case is extraordinary relief and will not be applied unless the equities clearly are balanced in favor of the party seeking relief. Greenwich BayYacht Basin Associates v. Brown, 537 A.2d 988, 991 (R.I. 1988). Equitable estoppel has been successfully asserted in this State to estop a municipality where a property owner incurs substantial obligations in good-faith reliance on the issuance of the permit, and there is a subsequent cancellation caused by a change in zoning, See Shalvey v. Zoning Board of Review of Warwick,99 R.I. 692, 210 A.2d 589 (1965); See also A. Ferland Sons,Inc. v. Zoning Board of Review of East Providence, 105 R.I. 275,251 A.2d 536 (1969), and also where there were substantial expenses incurred based on the parties' good faith reliance on an apparently validly issued building permit and revocation of permit would cause irreparable harm. Jones v. Rommell,521 A.2d 543 (R.I. 1987). The elements of equitable estoppel are: 1) good faith reliance; 2) on an act or omission of a municipality; 3) which induces a party to incur substantial obligations; 4) making it highly inequitable to enforce the zoning ordinance. 4 Rathkopf, The Law of Zoning Planning, § 45.104 at 45-44 (1991).
As to the first element of equitable estoppel, Plaintiff relied on the prior decision of the Johnston Zoning Board of Review in which a "Viti" variance was granted for lots 355, 356, and 357. The Board has not made sufficient findings of facts to indicate that such reliance was other than in good faith. This is demonstrated by Plaintiff's including his own name with the Assessor's Lot number on the list of abutting owners within a 200' radius when he applied for the variance for Lots 355, 356 and 357. (See List of Abutting Owner's within 200' Radius of AP 12 Lot 96, p. 1). The Zoning Board had all the facts before it at the time the first variance was granted to reject Plaintiff's application based on merger if it wished to. The second element of equitable estoppel, i.e., an act or omission of the municipality, was satisfied when the Zoning Board granted the variance for Lots 355, 356 and 357 without asserting the doctrine of merger against appellant. Such variance gave Plaintiff permission to build a single family house on such lots. Next, Plaintiff has to show that this action by the municipality induced him into incurring a substantial obligation. This element was satisfied when, relying on the grant of the variance as to Lots 355, 356 and 357, Plaintiff sold such property to a third-party leaving him with three substandard lots. Accordingly, if no variance is granted as to Lots 352, 353, and 354 (Assessor's Lot #482), he is left with three substandard lots of which he can make absolutely no use which constitutes a substantial obligation. Therefore, the Court finds that denying Plaintiff relief with respect to the instant substandard lots with no contiguous property ownership, a situation caused by the action of the Johnston Zoning Board, to be inequitable.
"Viti" Variance
In its application to the Johnston Zoning Board, Plaintiff was requesting relief from the Zoning Ordinances minimum lot size restrictions in order to use his property for an otherwise permitted use. The ordinance provides for variance relief of which there are two kinds: a deviation or "Viti" variance and a "true" variance. A "true" variance is when the proposed use of the property varies from any of the uses permitted under the ordinance, while a deviation or "Viti" variance is the proper relief sought from regulations that govern enjoyment of a permitted use, such as restrictions relating to side and rear yard lines, height limitations, lot size. Rozes v. Smith,120 R.I. 515, 519, 388 A.2d 816, 819 (1978); See also Viti v. ZoningBoard of Review, 92 R.I. 59, 64-65, 166 A.2d 211, (1960).
The Johnston Zoning Ordinance allows the members of the Zoning Board of Review to grant dimensional or "Viti" variances.See Johnston Zoning Ordinance, Art. III, 26-14(c). In order for such relief to be granted, an applicant must show:
 1. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 2. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize financial gain;
 3. That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 4. That the relief to be granted is the least relief necessary.
See R.I.G.L. 45-24-41(c). Further, the applicant must show:
 that the hardship that will be suffered by the owner of the subject property if the dimensional variances is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property.
See Id. See also Felicio v. Fleury, 557 A.2d 480, 482 (R.I. 1989).
Plaintiff's present hardship is created by the lack of sufficient area of the Lots 352, 353 and 354 and not due to the surrounding area. Further, the record reveals that this hardship was the result of the prior decision of the Zoning Board granting a variance on one substandard lot, leaving Plaintiff with a second substandard lot. Such a variance will not alter the general character of the surrounding area or impair the purpose of the zoning ordinance as most of the houses which surround Lots 352, 353 and 354 are built on lots of similar size. A dimensional variance would also be the least relief necessary as Plaintiff is not being granted relief from any of the other dimensional regulations such as side yard or set-back requirements and Lots 352, 353 and 354 are zoned residential, which is what Plaintiff intends to use the lots. Finally, the last requirement for a dimensional variance is satisfied as Lots 352, 353 and 354 are zoned residential and Plaintiff does not have a reasonable, alternative use besides building a single family house. Therefore, if a variance is not granted he will suffer more than a mere inconvenience because the land can be used for no other purpose. As such, the requirements for a dimensional variance are satisfied.
In the case at bar, Plaintiff has 9,180 square feet which is well over half the area required in the 15,000 square foot zone. Further, Plaintiff's lots are in an area zoned residential and if he cannot build a single-family house he cannot use the lots for any other purpose. In Felicio v. Fleury, 557 A.2d 480, the applicant was seeking relief from compliance with both size and frontage limitations for a single family residence in a district zoned for residential and agricultural use where the lot had less than one-third the area and half the frontage required. That Court found that it would be an adverse impact upon Felicio amounting to more than an inconvenience to require him to use the lot for agricultural purposes or not to use the land at all.Id. at 482.
Conclusion
After reviewing the entire record, this Court finds that the decision of the Board was affected by error of law and that substantial rights of the Plaintiff have been prejudiced thereby. After the Board's August 27, 1992 decision granting a dimensional variance to Plaintiff for Lots 355, 356 and 357 which were subsequently transferred to a third party and in effect created another substandard lot, that Board was equitably estopped from denying Plaintiff's application for a dimensional variance for Lots 352, 353 and 354. The Board had an opportunity to deny the first application based on merger of the six recorded lots but failed to do so. To deny Plaintiff's present application based on such, after the first three recorded lots have been transferred would be inequitable. Further, the record reveals that Plaintiff has met his burden of showing that the denial of his request will result in an adverse impact amounting to more than a mere inconvenience as he would not be able to use these lots for any other purpose. Accordingly, the decision of the Zoning Board of Review of the Town of Johnston must be and is hereby reversed and the Board is ordered to grant the variance to build on a substandard lot.
[1] Such property is also designated as Parcel 482 on Assessor's Plat No. 12. The Board's decision and most other documentation in the case file refer to such property by the Assessor's numbers (which have no legal significance), rather than by recorded lot numbers.
[2] Lots 355, 356 and 357 are also designated as Parcel 96 on Assessor's Plat No. 12 and are referred to as such in the Board's decision as well as in most other documentation in the Court's file.
[3] Apparently, Plaintiff had previously obtained permission to build on Lots 355, 356 and 357 immediately after the property was transferred to him in 1988 but such variance had lapsed. See
Plaintiff's Complaint, p. 2.
[4] Apparently, as the Plaintiff was seeking a dimensional variance, the Board erred in its first decision by using the special exception standard set out in the Johnston zoning ordinance rather than the dimensional variance standard set out in R.I.G.L. § 45-24-41.