DECISION
This case is before the Court on Cecilia Manuel Cigarrilha's ("Cigarrilhas") request for declaratory relief. Specifically, the Cigarrilhas seek a declaratory judgment that their three-family rental property, which is located in an area zoned for single and two-family dwellings, is a pre-existing legal nonconforming use. Jurisdiction is pursuant to G.L. 1956 § 9-30-1.
 I FACTS AND TRAVEL
Central to this case is a two and one-half story dwelling located at 24-26 Farragut Avenue in Providence, legally described as Lot 72, Tax Assessor's Plat 59 ("Property"). (Agreed Statement of Facts ("ASF") ¶ 1.) The Property was constructed in 1911, approximately twelve (12) years before the City of Providence adopted its first zoning ordinance.Id. ¶ 2-3. Pursuant to the 1923 ordinance, nonconforming uses prior to the adoption of the ordinance were deemed grandfathered unless abandoned. Id. ¶ 3. *Page 2 
The Property contains approximately 3216 square feet of land area and is located in a Residential R-2 zone. Id. ¶ 4. According to the City of Providence Zoning Ordinance ("Zoning Ordinance"), an R-2 zone is defined as a" . . . low density residential area[] comprising single-family dwelling units and two-family dwelling units in detached structures located on lots with a minimum land area of five thousand (5,000) square feet." Zoning Ordinance Article I § 101. Although the Property is located in a single and two-family dwelling residential zone, the Property has been taxed as a three-family dwelling since the 1940s. (ASF ¶ 5.)
In 1985, Cecilia Cigarrilha acquired the Property with her late husband, Dimas C. Pimentel. Before Cecilia and Mr. Pimentel purchased the Property, they relied on an MLS real estate listing which indicated that the Property was a three-family dwelling. (See Pls.' Ex. 8.) In October 1992, Mr. Pimentel passed away, leaving Cecilia the sole owner of the Property. Sometime thereafter, Cecilia met and married Manuel F. Cigarrilha, and in June 2000, Cecilia conveyed one-half ownership interest in the Property to Manuel via quitclaim deed. (Pls.' Ex. 7.)
The Cigarrilhas maintain that the Property always has been used as a three-family dwelling. (See Pls.' Post-Hearing Memo. at 1.) Additionally, the Cigarrilhas assert that they have used the Property continuously for rental purposes. Id. Sometime between June 2007 and February 2008, the Cigarrilhas allege that National Grid, the Property's electricity provider, removed the electrical meter for the second floor apartment. Id. National Grid removed the electric meter due to claims of tampering with the meter and unpaid electric bills. Id. *Page 3 
In an attempt to restore electricity to the second floor apartment, the Cigarrilhas contacted the City of Providence Department of Inspection and Standards ("Department") for a building permit. After visiting the Property on March 4, 2008, the Department refused to issue a building permit, claiming that the Cigarrilhas were in violation of several provisions of the Zoning Ordinance, the Providence Housing Code, and State Building Code. (ASF ¶ 6.) Specifically, the inspectors believed that living spaces had been created in the basement and the third floor of the Property without permits or certificates of occupancy. Id. ¶ 7. As a result, the Department cited the Cigarrilhas for a number of violations which included maintaining a third living unit in violation of the Zoning Ordinance. (See Pls.' Ex. 2.)
On May 2, 2008, the Cigarrilhas filed a Verified Complaint in this Court seeking a preliminary and permanent injunction. If granted, the Department would be required to issue the building permit necessary to install the electric meter. Additionally, the Cigarrilhas sought to have the Property declared to be a legal nonconforming use as a three-family dwelling.
In addition to the Complaint, the Cigarrilhas filed a motion for a temporary restraining order ("TRO"). Following hearing on May 12, 2008, this Court granted the Cigarrilhas' TRO. The Court ordered the Department to issue a building permit to allow restoration of electricity to the second floor apartment until the issue of nonconforming use could be heard before the Providence Zoning Board of Review ("Zoning Board"). (See Pls.' Ex. 3.) On July 22, 2008, the Zoning Board held an appeal hearing on the issue of the Property's use, and on November 20, 2008, the Zoning Board issued its decision. The Zoning Board declined to recognize the Property as a three-family dwelling and *Page 4 
upheld the Department's conclusion that the legal use of the Property is as a two-family structure.
The parties agree that jurisdiction over the issue of legal nonconforming use lies with the Superior Court as opposed to the Zoning Board. (ASF ¶ 13.) In addition to providing an Agreed Statement of Facts, the parties appeared before the Court on December 16, 2010. At that hearing, the parties introduced numerous exhibits and the Cigarrilhas testified in support of the instant request for declaratory relief. Following that hearing, the parties submitted post-evidentiary hearing memoranda. The matter is now before the Court for a decision on the merits of the Cigarrilhas' request for declaratory judgment.
 II STANDARD OF REVIEW
Under the Uniform Declaratory Judgments Act, the Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1. Section 9-30-2 provides that the Uniform Declaratory Judgments Act should be "liberally construed and administered." Furthermore, "[a] decision to grant or deny declaratory . . . relief is addressed to the sound discretion of the trial justice. . . ." Imperial Cas. and IndemnityCo. v. Bellini, 888 A.2d 957, 961 (R.I. 2005).
 III ANALYSIS
The Cigarrilhas assert that the doctrines of equitable estoppel and laches preclude the City of Providence ("City") from enforcing the Zoning Ordinance in the instant case. *Page 5 
Before the Court will address both equitable doctrines, the Court will discuss the threshold issue of nonconforming use.
 A Nonconforming Use
The General Assembly has defined "nonconformance" in the context of municipal land use regulation as "[a] building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." Duffy v. Milder,896 A.2d 27, 38 (R.I. 2006) (citing § 45-24-31(49)). Our Supreme Court has declared that "the burden of proving a nonconforming use is upon the party asserting it, who must show that the use was established lawfully before the zoning restrictions were placed upon the land." Id. at 37 (quoting RICO Corp. v. Town ofExeter, 787 A.2d 1136, 1144-45 (R.I. 2001)). "The reason for imposing such a heavy burden of proof needed to establish the existence of a nonconforming use is because `[n]onconforming uses are necessarily inconsistent with the land-use pattern established by an existing zoning scheme.'" RICO Corp.,787 A.2d at 1144 (quoting Toys "R" Us v. Silva,89 N.Y.2d 411, 654 N.Y.S.2d 100, 676 N.E.2d 862, 865 (1996)). Accordingly, "the policy of zoning is to abolish nonconforming uses as speedily as justice will permit." RICO Corp.,787 A.2d at 1145 (quoting Inhabitants of Windham v. Sprague,219 A.2d 548, 552-53 (Me. 1966)) (internal quotations omitted).
Here, the Cigarrilhas claim that since the time they acquired the Property "and as far back as . . . its construction date, the dwelling is believed to have been in continuous use as a three-family dwelling." (See Pls.' Post-Hearing Memo. at 1.) In support of this *Page 6 
claim, the Cigarrilhas rely on tax records which indicate that the Property has been taxed as a three-family since the 1940s. Additionally, the Cigarrilhas reference a real estate listing which advertised the Property as a three-family dwelling. The Cigarrilhas claim that because the City does not maintain taxation records prior to 1940, it is impossible "to establish through taxation records that the property has in fact been used as a legal non-conforming use to the date of the original Zoning statute of 1923." (See Pls.' Post-Hearing Memo. at 5.)
The Court notes that the Cigarrilhas must satisfy a heavy burden of proof which will not be met by introducing "hearsay or unsworn testimony or when the evidence of such alleged prior use is contradictory." RICO Corp., 787 A.2d at 1144. Although the Cigarrilhas may have evidence of three-family use supported by 1940s tax records and a real estate listing, such evidence is indeed nothing more than hearsay. And in light of RICO Corp., this Court gives little weight to such evidence. Furthermore, the Court finds that the only clear evidence of use is the Fire Department inspection card which indicates that as of February 20, 1940, the Property was being used as a two-family with storage on the third floor. (Defs.' Ex. C.)
Because the Cigarrilhas have presented no evidence whatsoever that the Property was used as a three-family dwelling prior to the enactment of the City's first zoning ordinance in 1923, they have failed to meet their burden of proof. Duffy, 896 A.2d at 37;see also Scituate v. O'Rourke,103 R.I. 499, 504, 239 A.2d 176, 180 (R.I. 1968) (holding for a nonconforming use to be sanctioned, it must be lawfully established prior to the implementation of zoning restriction or regulation). *Page 7 
 B Equitable Estoppel
The Cigarrilhas argue that the City should be precluded from enforcing its Zoning Ordinance based on the doctrine of equitable estoppel. The Cigarrilhas maintain that although the City has not affirmatively represented that the Property is a three-family dwelling, the Tax Assessor's Office has regularly taxed and assessed the Property as a three-family dwelling. Consequently, the Cigarrilhas assert that the Tax Assessor's actions led the Cigarrilhas to believe that the Property was a legal nonconforming use.
Under the doctrine of equitable estoppel, "a party may be precluded from enforcing an otherwise legally enforceable right because of previous actions of that party." Sturbridge HomeBuilders, Inc. v. Downing Seaport, Inc.,890 A.2d 58, 66-67 (R.I. 2005) (citing Retirement Bd. of theEmployees Retirement System of Rhode Island v. DiPrete,845 A.2d 270, 284 (R.I. 2004)). Equitable relief may be an appropriate remedy to estop a municipality where a property owner incurs substantial obligations in good faith reliance on actions or omissions of that municipality. See Shalvey v. Zoning Bd. ofReview of Warwick, 99 R.I. 692, 210 A.2d 589 (1965). However, equitable relief is "extraordinary" for zoning cases and will not be granted except "in the rare instance where the equities are clearly balanced in favor of the party seeking relief." Greenwich BayYacht Basin Associates v. Brown, 537 A.2d 988, 991 (R.I. 1988). "The elements of equitable estoppel are: 1) good faith reliance;[1] 2) on an act or omission of a municipality; 3) *Page 8 
which induces a party to incur substantial obligations; 4) making it highly inequitable to enforce the zoning ordinance." 4 Rathkopf, The Law of Zoning and Planning, 45.104 at 45-44 (1991).
The only evidence to support the claim that the City acted in a way which induced the Cigarrilhas to incur an obligation is their reference to 1940s tax records. The Court notes that
 "[i]n determining whether an existing use of property may be protected as a lawful nonconforming use, a threshold question is whether the property owner has established a vested right to that use . . . Thus, the purchase of property with an intention to use it for a specific purpose does not in itself entitle the owner to use it in violation of a . . . zoning ordinance." Patrick. J. Rohan, Zoning and Land Use Controls § 41.02[4].
Even if the Court believed that the Cigarrilhas purchased the property only after reviewing the 1940s tax records, the Cigarrilhas had the obligation to do more than simply believe they were entitled to a specific use of property based on tax records. Namely, the Cigarrilhas could have and should have consulted the appropriate municipal department — the Zoning Board — to ensure that the Property was zoned for the Cigarrilhas' intended use.
Moreover, tax assessments have no bearing on the issue of nonconforming use. Tax assessments are based on actual use, not legal use. See Alger v. Iannella, 1999 WL 1423955 at * 2 (R.I. Super. Ct. Oct. 13, 1999). Also, a municipal action,per se, cannot support the Cigarrilhas' assertion that they have the vested right to use the Property as a three-family dwelling. See Hafner v. Zoning Hearing Bd. of AllenTownship, 974 A.2d 1204, 1212 *Page 9 
(Pa. Commw. Ct. May 21, 2009) (holding "[o]ne who commences a use without inquiry into whether it is permitted by the municipality's zoning ordinance does so at his own peril.") Consequently, the Cigarrilhas have failed to establish that equitable estoppel precludes the City from enforcing its Zoning Ordinance.
 C Laches
Lastly, the Cigarrilhas contend that the equitable defense of laches precludes the City from enforcing its Zoning Ordinance. The Cigarrilhas allege that because they have been in possession of the Property for almost twenty-five years and the property has been used in an open and continuous manner, the City has been aware of the Property's use as a three-family dwelling each time the property has been assessed for tax purposes.
"Laches . . . involves not only delay but also a party's detrimental reliance on the status quo." Adam v. Adam,624 A.2d 1093, 1096 (R.I. 1993). Our Supreme Court has outlined a two-part test to be used in determining whether or not the doctrine of laches can be sustained: "[f]irst, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. Second, this delay must prejudice the defendant."O'Reilly v. Town of Glocester, 621 A.2d 697, 702 (R.I. 1993).
Several courts have concluded that the doctrine of laches does not operate as a defense in public interest cases due to "(1) the importance of rights at stake when the interests of the public are asserted and (2) the determination that those rights cannot be compromised or forfeited by the negligent or illegal acts of public officials who fail to carry out their governmental obligations. Id. at 703. (citing StudentPublic Interest *Page 10 Research Group of New Jersey v. P.D. Oil Chemical Storage,Inc., 627 F. Supp. 1074, 1085 (D.N.J. 1986).
In the instant case, the Court notes that the City has not acted negligently. Tax assessors are authorized to valuate property and to determine its rate of taxation. See Kargman v. Jacobs,113 R.I. 696, 704, 325 A.2d 543, 547-48 (R.I. 1974). They are not endowed with the responsibility to ensure that each and every property conforms to the appropriate zoning laws. When the appropriate City division learned of the Property's unlawful use, that Department issued a "Building Inspection Notice of Violation" within thirty days. (See Pls.' Ex. 2.) Additionally, even if this Court believes that the City had acted negligently, this Court will not use laches to sanction an illegally established nonconforming use in contravention of the Zoning Ordinance, given that "the overriding public policy of zoning . . . is aimed at [the] reasonable restriction and eventual elimination [of nonconforming uses]." Rico Corp., 787 A.2d at 1144-45 (citation omitted).
 CONCLUSION
The Cigarrilhas request for a declaration adjudging 24-26 Farragut Avenue to be a pre-existing, legal nonconforming use is denied because they have failed to prove that the Property has been used as a three-family dwelling since the enactment of the first zoning ordinance in 1923. Duffy, 896 A.2d at 37. Furthermore, the Court finds the Cigarrilhas are not entitled to equitable relief afforded by the doctrines of equitable estoppel and laches.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] The City claims the Cigarrilhas do not have good faith reliance on the City's acts or omissions. Specifically, the City relies on building permit applications whereby the Cigarrilhas (or their agents) indicate that their property was a two-family dwelling. (See Defs.' Ex. D and E; and Pls.' Ex. 4.). The Cigarrilhas introduced evidence which called into question the credibility of one of those exhibits. According to the Cigarrilhas, Defense Exhibit D is a forged instrument because the application was signed by Dimas Pimentel, although he died approximately two years before the date the application was allegedly signed by him. (Compare Defs.' Ex. D with Pls.' Ex. 6.) The Court's decision does not rest on this particular evidentiary dispute.
 *Page 1