Robert M. DUFFY et al.

v.

Larry MILDER et al.

Larry Milder et al.

v.

East Greenwich Town Council et al.

No. 2004–256–Appeal, 2004–257–Appeal.

Supreme Court of Rhode Island.

April 14, 2006.

Matthew Oliverio, Providence, for Robert M. Duffy.

W. Mark Russo, Providence, for Larry Milder.

Raymond Marcaccio, Providence, for East Greenwich Preserve Condominium.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

We are called upon in this case to determine the rights of neighbors at war over the keeping of horses. This story begins in 1954, when the Poncelet family became engaged in various equestrian activities at their family farm, located on a large tract of land in the Town of East Greenwich, designated as assessor's plat 10F, lot Nos. 24 and 28. Those activities included riding, training, and breeding horses.

By 1997, however, perhaps consistent with the town's gradual evolution from an agricultural to a suburban environment, the Poncelets were disposed to part with the farm. They found willing buyers in James and Paula Malm, who purchased lots Nos. 24 and 28 with the intent to alter the property from its pastoral use to condominiums. The Malms began the long and arduous process of obtaining the necessary permits and approvals attendant to such a development. Eventually, they garnered, subject to several conditions (some in contention here), permission to construct a condominium project, designated as the East Greenwich Preserve.

In July 1998, in conjunction with their proposal to develop their property, the Malms successfully petitioned the town to rezone lot No. 24 and a portion of lot No. 28 from Residential (R–30) and Farming (F) to Commercial Limited (CL). In January 1999, the Town Council again changed the zone of the property to Planned Development Residential or PDR–30.[1]

The legislative largesse of the Town Council did not come without strings at-

---

1. An R–30 district is "designed to provide for medium-low density residential development within the Town." East Greenwich Zoning Ordinance, Article III, Section 1(e). An F district, as it was defined prior to 2000, was "[a] special zone designed for agricultural uses interspersed with open land and residential uses." East Greenwich Zoning Ordinance, Article III, Section 1(e) (1999). PD, or planned development is a "designation which allows for residential land uses through environmentally sensitive design." East Greenwich Zoning Ordinance, Article III, Section 1(m). The designation PDR–30 overlays a PD district in an R–30 zone. A Commercial Limited district, as it was defined prior to 2000, was for "low density business uses, professional and personal services and high density residential development." East Greenwich Zoning Ordinance, Article III, Section 1(j) (1999).

tached. Those strings included a requirement that the Malms grant an easement in the so-called "corral" area of lot No. 24, consisting of about 2.7 acres.[2] The easement provides

> "the grantors [the Malms], their successors and/or assigns (1) the right to install underground utilities through said conservation area; (2) the right to construct and/or maintain perimeter fencing and the right to maintain said area by cutting the grass and removal of brush and dead and/or dying trees thereby permitting the area to be maintained in substantially the same manner in which it has been maintained; (3) to allow the grazing of horses and/or similar animals; (4) to allow the area to be used for passive recreational purposes by the owner(s) of the 'Charing Hall' Manor House and the owners of those condominium units located within the 'East Greenwich Preserve[,]' [sic] a condominium development located on Division Street in the Town of East Greenwich, County of Kent, State of Rhode Island, and their successor and/or assigns."

It is also evident from the record that the corral area, a local landmark of sorts, was a pleasing vista that the town wished to preserve as a reminder of its more bucolic past. To further this aim, the town also required the Malms to enter into a conditional easement/agreement, which delineated responsibilities for maintaining the corral area.[3]

In due time, the condominium project was completed on lot No. 28. Thereafter, the Malms sold lot No. 24 and its single-family residence to Larry Milder and Lisa Milder, who, it seems, had an avid interest in grazing animals and riding horses. Before they closed on the property, the Malms gave the Milders assurances that they could keep horses there, and they secured a zoning certificate from Donald Dailey, a municipal zoning official.[4] The certificate said that although the property was zoned PDR–30, and horses were not permitted in that zone, "the keeping of horses on this lot is currently considered a lawfully nonconforming and permitted use and shall be allowed to continue until such time as an overt action for discontinuation is conducted by the property owner." In addition, the Malms obtained a building permit allowing the construction of a barn on the property for "storage purposes only."

It was not long before the Milders began to conduct extensive equestrian and related agricultural activities on lot No. 24. They petitioned the Town Council for per-

---

2. For clarity, we will refer to the entirety of lot No. 24 as "the property" or "lot No. 24," and refer to the portion of lot No. 24 that is burdened by the easement as "the corral area," or "the open space easement." The corral is also referred to in documents contained in the record as "the paddock area."

3. The conditional easement/agreement required maintenance of the corral area, including making repairs to, and painting the fence, as well as, haying the field·at least twice a year. It also gave the town the right to enter the corral area and make such repairs at the expense of the parties to the agreement if it determined that area was not being properly maintained.

4. Dailey testified before the East Greenwich Municipal Court that a zoning certificate is a statement issued by the town specifying the current zoning designation of a specific property. We note that according to the town's code of ordinances, zoning certificates are granted by the Zoning Enforcement Officer after he·or she receives a completed zoning certificate application. East Greenwich Zoning Ordinance, Article XII, Section 3.2. However, Lee Whitaker, Director of Planning for the Town of East Greenwich, admitted during a deposition that he has never seen a written application for a zoning certificate submitted by the Malms or the Milders in this case.

mission to install an internal grazing management system as well as a riding area, but the Town Council unanimously denied their request. Despite this rebuff, the Milders grazed approximately sixteen animals, including llamas, alpacas, goats, and horses. They also erected internal fences across the open space easement area and removed topsoil to install a riding ring, jumps, and posts. The Milders used the barn, which the town had permitted for "storage purposes only," as a stable where they boarded numerous horses.

Concerned with the intensity of the Milders' property use, including that portion restricted by the open space easement, Donald Dailey wrote a letter to the Milders, instructing them to remove the internal fences placed in the corral area, to remove the riding ring and jumping structures, and to cease horseback riding in the corral area. Alleging that the Milders had disregarded the notice, the town issued a summons, which ordered the Milders to appear before the East Greenwich Municipal Court to answer to the following charges:

"1) The internal fencing network installed inside the grazing/paddock area has not been removed. A recently installed metal gate installed in the paddock fencing has not been removed and original fencing or fencing of like-kind material has not been installed.

"2) All 'jumping obstacles' and the like have not been removed from the paddock area.

"3) Horseback riding as a use in the paddock area has not been discontinued.

"4) The number of horses kept on the property exceeds the maximum number (4) allowed." [5]

The town also cited the Milders for building code violations with respect to their use of the barn for the stabling of horses.[6]

The Milders' response was to file a complaint in Superior Court against the Town Council (KC 02–873). Count 1 of their complaint sought declaratory and injunctive relief that maintaining horses and conducting equestrian activities on lot No. 24 constituted a lawful nonconforming and permitted use. Count 2 also sought declaratory and injunctive relief that such activities on the property were consistent with the open space easement. On the town's motion, the court remanded count 1 of the Milders' complaint to the East Greenwich Zoning Board of Appeals.

Shortly thereafter, abutting neighbors, Robert and Sharon Duffy, and Joseph and Kim Herbert [7] (the Duffys) moved to intervene, and their motion was granted. They filed an answer to the Milders' complaint and also pressed a number of counterclaims. The Duffys requested injunctive relief on the grounds of nuisance, trespass, and breach of the open space easement

---

5. The East Greenwich Municipal Court asserted its jurisdiction over the Milder's alleged zoning violations. The municipal court held four hearings on this matter and issued a written decision in which it found that the use of internal fencing in the corral area, the use of jumping obstacles, horseback riding, and the keeping and maintenance of nine horses, were consistent with the pre-existing nonconforming use and therefore not in violation of applicable zoning ordinances.

6. The Milders have appealed a decision of the zoning board of appeals with regard to the

barn, and the matter currently is pending before the Superior Court (KC 03–716).

7. The Duffys own the property located at assessor's plat 10F, lot No. 376, which abuts the portion of lot No. 24 that is subject to the open space easement. The Herberts own property located at assessor's plat 10F, lot No. 342, which also abuts the portion of lot No. 24 that is subject to the open space easement. We will refer to the Duffys and Herberts collectively as "the Duffys" or "the intervenors."

and conditional easement/agreement. The Duffys also claimed that stabling and boarding horses on lot No. 24 violated the municipal zoning ordinance, and they requested that the court remand all issues concerning the zoning certificate to the zoning board of appeals, to which the Duffys then were appealing the issuance of that document.

On remand, after a hearing on the matter, the East Greenwich Zoning Board of Appeals denied the Duffys' appeal of the zoning certificate and upheld the zoning officer's ruling that the keeping of horses on lot No. 24 was a lawful nonconforming and permitted use. The Duffys then filed a separate complaint in Superior Court (KC 03–82), in which they appealed the zoning board's decision, pursuant to G.L. 1956 § 45–24–69. In this complaint, they further alleged that the Milders' equestrian activities violated existing zoning as well as the terms of the open space easement and conditional easement/agreement. Therefore, they asked the court to reverse the decision of the zoning board, deem the zoning certificate null and void, order the Milders to cease equestrian activities on the property, and restore the corral area to its original condition in accordance with the terms of the open space easement and conditional easement/agreement. This action was consolidated with KC 02–873.

Not to be outdone, however, the Milders moved to dismiss count 1 of the Duffys' complaint, the appeal of the zoning board's decision, on grounds that the Duffys had failed to comply with the notice provisions of § 45–24–69.1.[8] This deficiency, the Milders alleged, rendered the Duffys' appeal untimely under the limitations period imposed by § 45–24–69, and, therefore, the Superior Court had no jurisdiction to hear the matter. The court agreed and dismissed that count of the Duffy's complaint on December 8, 2003.[9]

Finally, the East Greenwich Preserve Condominium Association[10] (the Association) filed a complaint against the Milders in Superior Court (KC 03–522). Its complaint requested that the court enjoin the Milders from maintaining or using horses on the property. It also asked that the Milders be restrained from preventing members of the Association from having access to the open space easement area. The Association contended that the Milders' conduct violated the express language of the open space easement, conditional easement/agreement, and restrictive and protective covenants, and constituted a nuisance. The Association moved to consolidate its complaint with the pending lawsuit involving the Milders, the Duffys, and the East Greenwich Town Council (KC 02–873), which the court granted.

8. General Laws 1956 § 45–24–69.1 states in pertinent part:
 "(a) Whenever an aggrieved party appeals a decision of a zoning board of review to the superior court pursuant to the provisions of § 45–24–69, the aggrieved party shall also give notice of the appeal to those persons who were entitled to notice of the hearing set by the zoning board of review. The persons entitled to notice are set forth and described in § 45–24–53.
 "(b) Notice of the appeal shall be mailed to those parties described in § 45–24–53 within ten (10) business days of the date that the appeal is filed in superior court not counting Saturdays, Sundays, or holidays.

Notice shall be sent by first class mail, postage prepaid, and the cost of the notice shall be borne by the aggrieved party filing the appeal in superior court."

9. The motion justice in case No. KC 03–82 also dismissed the remaining counts of the Duffys' complaint, in an order filed on September 8, 2003.

10. The East Greenwich Preserve Condominium Association is a nonprofit corporation formed for the purpose of administering the East Greenwich Preserve Condominiums located on assessor's plat 10F, lot No. 28.

The Duffys and the Association then jointly moved for summary judgment, pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. In essence, they asked the court to rule that the Milders' activities in the corral area violated the provisions of the open space easement and conditional easement/agreement. They also asked the court to order the Milders not to interfere with the Association's use of the corral area. Further, they requested the Superior Court to declare that the zoning ordinance prohibited the Milders from keeping, using, or stabling horses on lot No. 24.

The Milders responded with a cross-motion for summary judgment, in which they sought a declaration that they had the right, by prior nonconforming use, to keep, ride, and maintain horses on lot No. 24. The Milders also asked the court to rule that they could engage in equestrian activities in the corral area, that such activities were consistent with the open space easement, and that the plain terms of the easement afforded them the discretion to allow or forbid the Association members to use the corral.

The Superior Court determined that the critical facts were undisputed and proceeded to decide the motions for summary judgment. The court distilled the voluminous and serpentine record before it into three essential issues that it believed resolved the motions. First, it confronted the issue of whether keeping and maintaining horses on lot No. 24 violated applicable zoning ordinances, or alternatively, whether such activity constituted a legal nonconforming use. Second, the court grappled with how to interpret the open space easement and whether the Milders' activities in the corral area violated the terms of the easement. Finally, the court analyzed the conditional easement/agreement in terms of its effect on whether lot No. 24 was protected by a lawful nonconforming use.

In conducting its analysis, the Superior Court first considered what weight it would give the decision of the East Greenwich Municipal Court, which previously had ruled in favor of the Milders when the town issued the summons for zoning violations. In dismissing the town's complaint for zoning violations, the municipal court held that keeping horses on lot No. 24 was a permitted nonconforming use, and that therefore there was no zoning violation.[11] The hearing justice held that the doctrine of res judicata applied to the municipal court's decision and, therefore, it could not be disturbed. As a result, the Superior Court ruled that the Milders were free to keep and use their horses as they wished on lot No. 24, except for the 2.7 acres that are burdened by the open space easement. Accordingly, the hearing justice denied the Duffys' and the Association's joint motion for summary judgment with respect to the zoning issue.[12] Conversely, the court granted the Milders' cross-motion for summary judgment ruling that keeping and maintaining horses on lot No. 24 is a legal nonconforming and permitted use.

11. The municipal court specifically limited its analysis to determining whether keeping and riding horses on lot No. 24 was a lawful nonconforming use. The court refrained from considering the open space easement and the conditional easement/agreement.

12. The record is conflicting on this point. The Superior Court's order says that the intervenor's motion for summary judgment on count 4 of its complaint is denied. However, there is no count 4 of the intervenor's complaint. Rather, count 1 of intervenor's complaint is an appeal of the zoning board's decision to uphold the zoning certificate but this count was dismissed on December 8, 2003, on jurisdictional grounds. We note that the intervenor's motion for summary judgment was filed on November 17, 2003.

The Superior Court also determined that the open space easement required the Milders to limit their equestrian activities on the 2.7 acres of lot No. 24 subject to the open space easement, known as the corral area, to grazing horses and similar animals. In addition, the court held that the terms of the open space easement give the Association the right to participate in passive recreation in the corral area, but subject to the Milders' discretion. Accordingly, the hearing justice granted in part and denied in part the Duffys' and the Association's joint motion for summary judgment requesting declaratory and injunctive relief with respect to the open space easement. The motion was granted insofar as the court declared that the Milders were prohibited from keeping, stabling and/or boarding horses on a full-time basis, and from conducting equestrian activities beyond grazing in the corral. But, the motion was denied with regard to the Association's claim to unimpeded access to the corral, which the hearing justice ruled was subject to the Milders' discretion.

Finally, the Superior Court briefly considered the terms of the conditional easement/agreement executed by the Malms. The hearing justice reiterated his finding that res judicata should be applied to the decision of the municipal court with regard to the Milders' rights under the zoning ordinance. Therefore, he saw no need to address whether the terms of the conditional easement/agreement supported the Duffys' contention that the Malms had abandoned any claim to a lawful nonconforming use before the Milders purchased lot No. 24.[13]

Predictably, no party was happy with the Superior Court's decision, and each of them (except the town) has appealed some part of it to this Court. The Duffys contend that the hearing justice erred when he ruled that the Milders may continue their extensive equestrian activities on lot No. 24, except for the corral. They also argue that the court wrongfully dismissed their appeal of the zoning board's ruling that the zoning certificate was properly issued. The Association joins in most of the Duffys' arguments. It further urges that the Superior Court erred when it determined that the terms of the open space easement subordinate use of the corral area by Association members to the Milders' discretion. The Milders contend on appeal that the Superior Court erred when it ruled that the open space easement did not allow them to engage in horseback riding or other equestrian activities within the corral. For the reasons set forth herein, we reverse in part and affirm in part the judgment of the Superior Court.

**Standard of Review**

■ This Court consistently emphasizes that summary judgment "is an extreme remedy and should be granted only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Stewart v. Sheppard*, 885 A.2d 715, 719 (R.I.2005). "'In passing on a grant of summary judgment by a justice of the Superior Court, this Court conducts a *de novo* review.'" *Id.*

**Analysis**

**I**

13. After considering all of the claims before it, the Superior Court ordered the entry of judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

### The Zoning Issue [14]

#### A

#### The Duffys' Right to Intervene

 The Milders argue that only the town has standing to enforce its zoning ordinances, and in this case the town opted to enforce its zoning code by initiating an action in municipal court. The fact that the town did not appeal the adverse decision, they seem to suggest, ends the matter and the Duffys should not have been granted intervenor status by the hearing justice. Although we have said that only a town may initiate a suit to enjoin violations of local zoning ordinances, an exception to this rule applies when it can be established that the town solicitor does not adequately represent the interests of abutting landowners. *Town of Coventry v. Hickory Ridge Campground, Inc.*, 111 R.I. 716, 720–21, 306 A.2d 824, 827 (1973). In these situations, abutting landowners are allowed to intervene as of right. *Id.*

It is significant that here it was not the town that initiated the Superior Court litigation to determine the rights of the parties under the zoning ordinance, but the Milders. It also appears beyond dispute that the Duffys and the town at all times had different interests. The town's complaint in municipal court dealt primarily with the corral area and also the number of horses on the property, which the town alleged improperly expanded the prior nonconforming use.[15] However, the Duffys fiercely contested the Milders' right to have any horses on lot No. 24. In view of the facts in this case, including but not limited to the divergent interests of the Duffys and the Town of East Greenwich, it is our opinion that the hearing justice did not err when he permitted the Duffys to intervene.

#### B

#### Res Judicata

 In ruling that the Milders had the right to maintain horses on lot No. 24, the hearing justice gave res judicata effect to the decision of the East Greenwich Municipal Court, which had held that there was a prior nonconforming use. We believe that this was error by the hearing justice. This Court has often said that the doctrine of res judicata, or claim preclusion, " 'renders a prior judgment by a court of competent jurisdiction in a civil action between the same parties conclusive as to any issues actually litigated in the prior action, or that could have been presented and litigated therein.' " *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002). We have adopted "the 'transactional' rule governing the preclusive effect of the doctrine of res judicata." *Id.* at 1086. "Under this rule, all claims arising from the same transac-

---

14. The Duffys begin their appeal by arguing that the hearing justice erred when he granted the Milders' motion to dismiss the Duffys' appeal of the zoning board's decision on jurisdictional grounds. Because of our holding in this case we need not reach that issue. However, we note our recent holding in *Jeff Anthony Properties v. Zoning Board of Review of North Providence*, 853 A.2d 1226, 1231–32 (R.I.2004), that

"[a]lthough the Legislature clearly stated that zoning appeals are to be 'governed' by §§ 45–24–69 and 45–24–69.1, it did not go so far as to denominate the notice provi-

sions of § 45–24–69.1 as conditions precedent to jurisdiction. Absent clear statutory language that the ten-day notice requirement is jurisdictional, we conclude that a party's failure to so comply does not automatically require that it forfeit its right to appeal an adverse decision of a zoning board."

15. The town's position is that horses are permitted on lot No. 24 as a lawful nonconforming use. This position is evidenced by its issuance of the zoning certificate, which the zoning board of appeals subsequently upheld.

tion or series of transactions which could have properly been raised in a previous litigation are barred from a later action." *Id.*

■ In our opinion, the doctrine of res judicata does not apply to the municipal court's decision in this case because the municipal court did not have statutory authority to determine whether conducting equestrian activities on lot No. 24 was a lawful nonconforming use. In *RICO Corp. v. Town of Exeter*, 787 A.2d 1136 (R.I. 2001), the Superior Court gave res judicata effect to a lawful nonconforming use determination made by the Exeter Zoning Board of Review. In reversing the Superior Court, we noted that for res judicata principles to apply to any judgment or decision, "the court or tribunal entering the judgment or decision must first have subject matter jurisdiction over the case before it." *Id.* at 1144. We ruled that zoning boards are statutory bodies whose powers are legislatively delineated: "They are empowered to hear appeals from the determinations of administrative officers made in the enforcement of the zoning laws," and do not have the authority to confirm the legality of a preexisting use.[16] *Id.* (quoting *Olean v. Zoning Board of Review of Lincoln*, 101 R.I. 50, 52, 220 A.2d 177, 178 (1966)).

Similarly, the General Assembly vested the East Greenwich Town Council with the power to "establish a municipal court and confer upon such court original jurisdiction * * * to hear and determine causes involving violation of any ordinance." P.L.1998, ch. 171, § 1 (enacting G.L.1956 § 45-2-48). Therefore, the East Greenwich Municipal Court's jurisdiction is limited to determining violations of ordinances; it does not

possess the power to issue declaratory judgments, such as deciding whether a lawful nonconforming use exists with respect to a particular parcel of land. The jurisdictional limit of the municipal court was to determine whether the Milders had violated the zoning ordinance. The municipal court was not of "competent jurisdiction" to determine whether the keeping of horses on lot No. 24 was a lawful nonconforming use, and its decision cannot be afforded res judicata effect.

■ Moreover, the doctrine of res judicata is only appropriate where "there exists 'identity of parties, identity of issues, and finality of judgment in an earlier action.'" *Waters v. Magee*, 877 A.2d 658, 666 (R.I.2005) (quoting *Ritter v. Mantissa Investment Corp.*, 864 A.2d 601, 605 (R.I. 2005)). Here, the parties to the municipal court proceedings were the East Greenwich Town Council and the Milders. Neither the Duffys nor the Association were parties to that action. Although the doctrine of res judicata "relates to the effect of a final judgment between the parties to an action and those in privity with those parties," the Duffys and the Association are not in privity with the town. *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I.1994). "Parties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 680 (R.I.1999) (quoting *Studio Art Theatre of Evansville, Inc. v. City of Evansville Indiana*, 76 F.3d 128, 131 (7th Cir.) *cert. denied*, 519 U.S. 866, 117 S.Ct. 177, 136 L.Ed.2d 117 (1996)). As discussed above,

---

16. *Cf. Town of Richmond v. Wawaloam Reservation, Inc.*, 850 A.2d 924 (R.I.2004) (giving res judicata effect to decision of local zoning board that an addition to a structure violated an applicable zoning ordinance because it impermissibly expanded a nonconforming use).

the Duffys and the Association vehemently oppose the proposition that keeping any horses on lot No. 24 is a lawful nonconforming use. Conversely, a town zoning official granted the Malms a zoning certificate that said that keeping horses on lot No. 24 is a lawful nonconforming use, and the zoning board of appeals upheld the validity of the certificate. Therefore, it is our opinion that the Duffys, the Association, and the town do not have a commonality of interest. Accordingly, the doctrine of res judicata cannot be applied in this case to the decision of the municipal court, and it was error for the Superior Court to have done so.

### C

### Is There a Lawful Nonconforming Use?

■■■■■ The East Greenwich Code of Ordinances provides that keeping and riding horses is not permitted in a PDR–30 zone, in which lot No. 24 lies. Nevertheless, the Milders maintain, and the hearing justice found, that equestrian activities are a lawful nonconforming use with respect to lot No. 24. We have explained that a lawful nonconforming use "is a particular use of property that does not conform to the zoning restrictions applicable to that property but which use is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." *RICO Corp.*, 787 A.2d at 1144. *See also* Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning*, § 72:1 (Thomson/West 2005). The burden of proving a nonconforming use is upon the party asserting it, who must show that the use was established lawfully before the zoning restrictions were placed upon the land. *RICO Corp.*, 787 A.2d at 1144. We

impose a heavy evidentiary burden on one who asserts a nonconforming use because " '[n]onconforming uses are necessarily inconsistent with the land-use pattern established by an existing zoning scheme.' " *Id.* In fact, we have subscribed to the view that a lawful nonconforming use is " 'a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as speedily as justice will permit.' " *Id.* at 1145.

Here, it appears that the Poncelets used lots Nos. 24 and 28 extensively as a horse farm until they sold the property to the Malms in 1997. The Superior Court bestowed res judicata status on the municipal court's finding that:

> "[T]he Poncelet horse farm operating since the 1950s became a preexisting nonconforming use coming into existence 'back to the 1960s' when the Town changed its zoning ordinances. When the property was rezoned in 1999 and again in 2000, those zoning changes did not change the legal nonconforming use, nor is there any evidence that this preexisting nonconforming use had been abandoned."

The Milders maintain that the lawful nonconforming use of keeping and riding horses on lot No. 24 arose at some time before 1998, when their predecessors in title requested zone changes to develop the land,[17] but that these changes did not extinguish the lawful nonconforming use of the property as a horse farm. On the other hand, the Duffys argue that the use of the property as a horse farm was abandoned as a matter of law even before the Milders purchased it.

---

17. We refer to the changes from residential and farming to Commercial Limited and then

Planned Development Residential.

The General Assembly has defined a "nonconformance" in the context of municipal land use regulation as "[a] building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." Section 45–24–31(49).[18] Our review of the case law reveals that most nonconforming use cases arise in the context of amendments to the local zoning code that render illegal a long-standing use of a particular piece of property. *See Town of Richmond v. Wawaloam Reservation, Inc.*, 850 A.2d 924 (R.I. 2004); *RICO Corp. v. Town of Exeter*, 787 A.2d 1136 (R.I.2001); *Jones v. Rommell*, 521 A.2d 543 (R.I.1987). We have held that in these situations, a nonconforming use "is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." *RICO Corp.*, 787 A.2d at 1144 (citing *Town of Scituate v. O'Rourke*, 103 R.I. 499, 503, 239 A.2d 176, 179 (1968)).

■ It appears from the record before us that just such an occurrence came to pass on the property in question in the 1960's when the Town of East Greenwich revised its zoning code in such a manner that would restrict the Poncelets' existing use of their property as a horse farm. However, since the Poncelets already were engaged in such activities, their rights continued unabated as a prior nonconforming use. It is well·settled that a lawful nonconforming use is not discontinued when the title to the property is conveyed to a new party. I Kenneth H. Young, *American Law of Zoning*, § 6.40 at 610–11 (4th ed. CBC 1996) ("The right attaches to the land itself * * * [a]ccordingly, a change in the ownership or tenancy of a nonconforming business or structure does not affect the right to continue the nonconforming use."). Therefore, the Malms were also entitled to use lot Nos. 24 and 28 as a horse farm when they purchased the property in 1997. However, as will be explained, the Malms abandoned this privilege when they chose to develop their property.

■ We embrace the general proposition that "if the continuation of use is interrupted by the voluntary act of the user, the right to continue it as a nonconforming use is ended * * *." 1 Kenneth H. Young, § 6.65 at 676. *See also Jones*, 521 A.2d at 545 ("[A]lthough an established use may continue notwithstanding the subsequent enactment of a prohibitory zoning ordinance, any change of use mandates compliance with the zoning regulations in effect at the time the change is made."). The Rhode Island Zoning Enabling Act explains that "[a] zoning ordinance may provide that, if a nonconforming use is abandoned, it may not be reestablished." Section 45–24–39(c). Indeed, the East Greenwich Code of Ordinances contains such a provision. *See* East Greenwich Zoning Ordinance, Article V, Section 1. It further provides, in language similar to § 45–24–39(c), that "[a]bandonment of a non-conforming use shall consist of either an owners' (or legal tenant if applicable) overt act or a failure to act which demonstrates that there is neither a claim nor any interest in continuing the nonconforming use." East Greenwich Zoning Ordinance, Article V, Section 3.2. The filing and successful prosecution of a petition to rezone a lot to which a nonconforming use is attached is clearly such an overt act.

---

**18.** The Rhode Island Zoning Enabling Act of 1991, P.L.1991, ch. 307, § 1(enacting §§ 45– 24–27 through 45–24–72).

■ It is our opinion that the Malms abandoned any claim to a prior nonconforming use when they requested a zone change to accommodate their desire to develop their property into condominiums. Under the Town of East Greenwich Code of Ordinances, a horse farm is not permitted within either a commercial zone or a residential zone. East Greenwich Zoning Ordinance, Article III, Section 3.4. Thus, when the Malms decided to develop their property, they essentially asked the town to rezone their land in a manner that would make it illegal to keep horses on it. This overt act manifested their intent to abandon the use of their property as a horse farm. Therefore, the Milders, as successors in title to lot No. 24, did not acquire any nonconforming use to keep horses on the property because any such rights had been extinguished before the property was conveyed to them. Moreover, it is clear that once abandoned, a nonconforming use cannot lawfully be revived. *See generally,* 1 Kenneth H. Young at § 6.65 (positing that a nonconforming use is valid only if it has continued in an unbroken sequence from the time the zoning ordinance became effective to the date of the alleged violation). Accordingly, we reverse the trial justice and hold that the Milders cannot keep, maintain, or ride horses on their property without violating applicable zoning ordinances.

II

Open Space Easement

The Superior Court held that according to the unambiguous terms of the open space easement, the Milders could graze horses or similar animals in the corral area, but they could not stable horses or conduct other equestrian activities there. On appeal, the Milders contend that horseback riding is allowed under the terms of the open space easement. On the other hand, the Association argues that the hearing justice erred when he concluded that the Milders have the discretion to permit or limit the members of the condominium Association from engaging in passive recreational activities in the corral area.

The open space easement says in pertinent part:

"JAMES MALM and PAULA MALM * * * do hereby grant to the TOWN OF EAST GREENWICH * * * an 'Open Space Easement' over that area designated as 'Corral Area Open Space Easement' * * * thereby protecting said area from the erection of any buildings thereon and further preventing the removal of soil, clear cutting of trees and other natural features, excepting, however, allowing the grantors, their successors and/or assigns (1) the right to install underground utilities through said conservation area; (2) the right to construct and/or maintain perimeter fencing and the right to maintain said area by cutting the grass and removal of brush and dead and/or dying trees thereby permitting the area to be maintained in substantially the same manner in which it has been maintained; (3) to allow the grazing of horses and/or similar animals; (4) to allow the area to be used for passive recreational purposes by the owner(s) of the 'Charing Hall' Manor House and the owners of those condominium units located within the 'East Greenwich Preserve,' [*sic*] a condominium development * * * [.]"

■ We note that the open space easement was a grant by the Milders' predecessors in interest to the Town of East Greenwich. Although the Milders filed a motion to dismiss the Association's complaint (KC 03–522) pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, on the ground that the Association had no standing to enforce the

easement, there is no indication in the record that this issue was decided. Further, the Milders have not raised the question of standing on appeal. We therefore consider this issue to be waived. Because we agree with the hearing justice that the easement, on its face, does not grant the Association members the unconditional right to participate in recreational activities in the corral area, we affirm that portion of the judgment that denies the Duffys' and the Association's joint motion for summary judgment insofar as the Association's access to the corral area is subject to the Milders' discretion. We also hold that the plain terms of the open space easement limit the use of animals in the corral to the grazing of horses and/or similar animals. Therefore, we affirm the Superior Court's judgment that the Milders may not conduct equestrian activities, such as the keeping, stabling, riding, and/or boarding of horses upon that portion of lot No. 24 that is burdened by the open space easement.

### Conclusion

For these reasons, we reverse in part, and affirm in part, the judgment of the Superior Court. We remand the papers in this case to the Superior Court for further proceedings consistent with this opinion.