DECISION
This matter is before the Court for decision on the extent of permissible marina use by the Tiverton Yacht Club of the waterfront property across the street from the Clubhouse.
This Court has previously ruled, after conducting a bench trial, that the record was insufficient to "fairly determine the extent of marina use the Club is entitled to." Campbell v. Tiverton Yacht Club. 2007 R.I. Super. LEXIS 118 (Thunberg, J.).
The Plaintiffs contend that at the time the club was designated a nonconforming use in 1964, no attendant marine operations were in existence which could be legitimately embraced within that use. *Page 2 
The Yacht Club counters that the marina is "a conforming use, permitted by right, both by the Tiverton Zoning Code and permitted by [the Coastal Resources Management Council ("CRMC")] . . ." which can "stand alone from the clubhouse property."
Plaintiffs rely on the testimony of Matthew S. Moran who lived on Riverside Drive from 1966 to 2004, and was involved with the Yacht Club from 1972 to 1989. Although Mr. Moran commenced his involvement with the club as a volunteer, he became a paid employee around 1979 and the Steward of the Club in the early 1980's. The uncontradicted testimony of Mr. Moran clearly establishes that marina operations were first undertaken in 1987, and subsequently permitted by CRMC in 1988. Mr. Moran specified that from 1972 to 1986, neither slips nor moorings were rented by the Yacht Club to any members. Rather, the members would rent moorings operated and controlled by the Town of Tiverton or would rent moorings or slips at nearby marinas. The first documentation of any rentals by club members from the Tiverton Yacht Club is contained in the 1988 Tiverton Yacht Club Log Book. Prior to 1987, the "in-water" facilities maintained by the Yacht Club consisted of a floating T-dock, two swim rafts and a dock for 30-minute transient tie-ups. After CRMC consent was obtained in 1988, a portion of the T-dock was extended and several finger piers were installed to serve as slips. At no point in the course of the proceedings was Mr. Moran's testimony contradicted or impeached.
The Defendants presented the testimony of Gregory Jones and Wayne Karzenski, the current Rear Commodore and Vice-Commodore, respectively, of the Yacht Club. While they were both pleasant and credible gentlemen, neither was a in a position to provide illumination as to the club's marina operations, if any, as they may have existed in 1964.
Mr. Jones, a member of the club since 1992 or 1993, proffered that in 1964 the Club's roster reflected 220 memberships and that it currently reflects 155 memberships. Mr. Karzenski, *Page 3 
a member since 1993, explained the "point system" method of assignment of marina slips to applicants. One point is accorded to an individual for each year of membership and additional points are awarded if the member sits on a sub-committee (1 point), chairs a committee (2 points) or sits on the Board of Directors (3 points). The purpose of employing this system, according to Mr. Karzenski, is to encourage volunteerism among the club's members.
Our Supreme Court has declared that "the burden of providing a nonconforming use is upon the party asserting it, who must show that the use was established lawfully before the zoning restrictions were placed upon the land." Duffy v. Milder, 896 A.2d 27, 37 (R.I. 2006) (citingRICO Corp. v. Town of Exeter. 787 A.2d 1136, 1144-45 (R.I. 2001)). The Court has imposed a "heavy evidentiary burden on one who asserts a nonconforming use because `[njonconforming uses are necessarily inconsistent with the land-use pattern established by an existing zoning scheme.'" Id. "In fact, [the Court has] subscribed to the view that a lawful nonconforming use is `"a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as speedily as justice will permit.'" Id. "A use does not obtain the protection afforded by its status as a legal nonconforming use unless the use actually existed at the time the ordinance prohibiting it took effect." Town of Richmond v.Wawaloam Reservation. Inc. . et al.. 850 A.2d 924, 934 (R.I. 2004) (emphasis added).
The Defendant Yacht Club urges this Court to view the marina as a separate lot supporting a conforming use "permitted by right, both by the Tiverton Zoning Code and permitted by CRMC." (Defendant's Memo. p. 5.)
However, there is no evidentiary support for such a characterization. To the contrary, the evidence clearly demonstrates that the marina activities are intended to coalesce with the *Page 4 
operation of the clubhouse. For example, the Club presently has 21 slips and eight moorings at the location and designed a septic system to accommodate 174 persons using the slips and the yacht club premises together.
The record before the Court regarding the pivotal year of 1964, however, is completely devoid of any evidence probative of marina activities taking place in conjunction with the operation of the yacht club premises. Therefore, a tandem marina/clubhouse operation is contrary to the applicable law regarding non-conforming uses and must be disallowed. The Tiverton Yacht Club marina operations were not initiated until 1987, and clearly represent an expansion of a nonconforming use in a residential zone. The imprimatur of CRMC conferred upon Defendants "in-water" installations in no way relieves the Defendant Yacht Club from compliance with the local zoning regulations.
As the Defendant has not sustained its evidentiary burden of proving that any marina operations were extant in 1964, such operations must be prohibited and declared to be an unlawful expansion of a nonconforming use.
Counsel for the Plaintiff shall prepare an order in conformance with this Decision. *Page 1