DECISION
Before the Court is the appeal of Mark Baker and Elizabeth Kneib ("Appellants") from a written decision of the Zoning Board of Review for the Town of Jamestown ("Board") granting Doris Arthur ("Applicant" or "Arthur") a building permit for her property. The decision was recorded in the Town of Jamestown Land Evidence Records on August 1, 2007. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Arthur is the owner of record of land known as Jamestown Asssessor's Plat 9, Lot 537, located at 6 Baldwin Court, Jamestown, Rhode Island. The lot currently comprises approximately 3997.71 sq. ft. and is located in a residential (R-8) zone that requires a minimum of 8000 sq. ft. to construct a single-family dwelling. The ordinance also requires minimum setback requirements of 15' front, 30' rear, and 7' for each side yard. Jamestown Ordinance § 82-302. *Page 2 
The original size of the property was 2999.24 sq. ft., 60' in depth and 50' wide. Because this lot existed prior to the issuance of the zoning ordinance, the lot was deemed a preexisting legal nonconforming lot of record. Presently on the property, there exists an unoccupied single-family dwelling that was converted from a garage.
In 2005, Arthur wanted to build a single-family home on her property. She obtained advice that it was not practical to refurbish the current structure on her property and she should tear that down to build a new single-family home. (Tr. February 27, 2007, at 23-24.) When Arthur created the dimensions of the new one-family home, it was clear that she was not going to meet the setback requirements for the new structure. Consequently, in April of 2005, she applied for a variance; however, Arthur encountered some disapproval from neighbors, specifically the Appellants, and subsequently withdrew her application. Arthur instead purchased 998.47 sq. ft. of abutting land from Beverly Lange, her neighbor to her west. With the addition of this strip of land, Arthur applied for an administrative subdivision to formally add the strip to her parcel prior to her seeking a building permit.
The Town Planner granted the administrative subdivision on October 31, 2005. The approval of the administrative subdivision was recorded and posted by the Town, and no appeal was taken. Arthur then applied for a building permit to erect a single-family home on the parcel which now met all setback requirements. On December 19, 2006, Arthur was granted the building permit to demolish the exiting structure on her property and to build a new single-family dwelling.
The Appellants appealed the grant of the building permit to the Board. The Appellants live at 2 Baldwin Court (Assessor's Plat 9, Lot 453). The Appellant's *Page 3 
property abuts the Arthur property to the north and comprises the southwestern corner of the intersection of Baldwin Court and High Street.
The Board held two hearings: one on February 27, 2007, and one on June 26, 2007. At the June hearing, only four of the five members of the Board who were present at the February meeting were in attendance. The Board and both parties agreed to restart the hearing and hear all arguments anew. (Tr. June 26, 2007 at 4-8.) At the hearings, Appellants raised two issues. One issue was the ongoing border dispute between Arthur and Appellants, which the Board determined it lacked jurisdiction to hear.[1] The second issue the Appellants raised was that the legal nonconforming lot of record is now no longer a preexisting legal nonconforming lot. They claim the administrative subdivision has now made the lot a different lot than the lot of record that existed on the effective date of the zoning ordinance. Consequently, the Appellants maintain, Arthur should not have been granted the building permit because her lot was still below the 8000 sq. ft. minimum necessary to build a single-family home. The Appellants argued that Arthur should therefore have to apply for a dimensional variance. Id at 10-12.
At the hearing, Arthur argued that the lot was the same lot, and this was an instance of merger under Jamestown Code § 82-709. She also argued that it would be against public policy to penalize someone for trying to obtain more land to make the nonconforming lot more in conformity with the ordinance. Li at 29-31.
The Board denied the appeal orally at the June hearing and followed with a written decision that was filed on August 1, 2007. The Board concluded that the strip of *Page 4 
land added to the Arthur parcel did not create a new lot. The Board denied the Appellant's appeal, concluding that this lot was a preexisting legal nonconforming lot of record. The Appellants filed their complaint August 14, 2007, and amended the complaint joining the Zoning Board of Review. Notice was given pursuant to § 45-24-69.1.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d) which states in pertinent part:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."Salve Regina College v. Zoning Bd. of Review of City of Newport,594 A.2d 878, 880 (R.I. 1991) (citing De Stefano v. Zoning Bd. ofReview, 122 R.I. 241, 405 A.2d. 1167 (1979)). Substantial evidence "means such relevant evidence that a reasonable mind might accept as adequate to support a *Page 5 
conclusion, and means [a]n amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501,388 A.2d 821 (1978)).
When the Court conducts its review of the zoning board, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'"Curran v. Community Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting § 45-24-69(d)). The Court gives this deference to the zoning board of review due to the fact that the board is in a better position than the Court to "have knowledge concerning those matters which are related to effective administration of the zoning ordinance."Monforte v. Zoning Bd. of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962). With respect to questions of law, the Court is not bound and has the ability to review the decision of the Board denovo. Narragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1 (1977);Bunch v. Bd. of Review, R.I. Dep't of Empl. Training, 690 A.2d 335
(R.I. 1997).
The Court is also mindful of the standard of review that the zoning board of review is required to follow when reviewing a decision of a building official. When reviewing the decision of a building official, the zoning board of review may "reverse or affirm wholly or partly and may modify the order, requirement, decision, or determination appealed from and may make any orders, requirements, decisions, or determinations that ought to be made, and to that end has the powers of the officer from whom the appeal was taken. . . ." Section 45-24-68. The Court has a different standard of review than that of the zoning board of review. The zoning board of review is "vested with discretion to accept or reject the evidence presented. The board's essential function *Page 6 
is to weigh the evidence. The reviewing court, on the other hand, is restrained from weighing the evidence or substituting [its] judgment for the board's." Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990).
 Ill Analysis
The Appellants assess two major arguments in their appeal. First, they contend that the Board's decision affirming the determination of the building official is clear error of law because the land lost its status as a legal nonconforming use and is arbitrary, capricious, and characterized by an abuse of discretion, in view of the reliable, probative and substantial evidence of the whole record. Second, they contend that the Board should have allowed the Appellants the right to present evidence and argument that there was a boundary dispute. The Appellants maintain that the Board's determination that it did not have jurisdiction to decide the boundary dispute and, therefore, would not hear any evidence on the boundary dispute was arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion, in view of the reliable, probative and substantial evidence of the whole record.
 A Legal Issues Before the Board
The Appellants argue that the decision of the Board, denying their appeal of the building official, should not have been denied because the lot is no longer a legal preexisting nonconforming lot. They argue that when the administrative subdivision was granted, confirming the addition of the strip of land, this subdivision created a new lot and consequently took away the "grandfather rights" held by the previous lot. *Page 7 
Arthur argues that this lot does not meet the definition of a new lot, but instead, it has simply merged two parcels of land.[2] Arthur argues that adding land to a substandard lot comports with public policy to bring the preexisting nonconforming lot closer to conformance with the ordinance.
The Court must determine whether the Board based its decision on `"substantial evidence' to deny the appeal of the building official's permit. With respect to the amount of discretion that the building inspector possesses, [i]t is well settled in this state that building inspectors are without authority to do anything in the course of issuing permits for the erection of structures other than to determine that the proposed construction conforms precisely to the terms of the pertinent provisions of the zoning ordinance." Arc-Lan Co. v. Zoning Bd of Reviewof North Providence. 106 R.I. 474, 476, 262 A.2d 280, 282 (1970) (citingAiootian v. Zoning Bd. of Review. 85 R.I. 441, 132 A.2d 836 (1957)).
This Court, after examining the record as a whole, finds that the Board relied on substantial evidence when making its decision to deny the appeal. Neither side presented to the Board decisional case law from Rhode Island that was directly on point. Both sides argued at the hearing and provided memos to the Board.
The Appellants relied upon the Rathkopf[3] zoning treatise and several cases from other jurisdictions. In one case, State ex rel. LaVoie v. Building Commissioner of the Town of Trumbull, 65 A.2d 165 (C.T. 1948), the Plaintiff purchased a substantial number of legal substandard lots and then changed the boundaries of these lots to build on and *Page 8 
sell these lots that were still substandard. Some of these new boundaries eliminated streets that had been made out on the map and created lots for more houses. The La Voie Court ruled that the plaintiff, by changing the boundaries of a number of these lots, created new lots that were no longer existing lots. In Parks v. Board of CountyCommissioners of Tillamook County, 501 P.2d 85 (O.R. 1972), another case on which Appellants rely, an Oregon developer proposed to build eleven single-family homes on a preexisting legal substandard lot; however, he ignored all lot lines and intended the single-family homes be separately owned, but all of the land be collectively owned as a condominium complex. The Parks Court ruled that this use of the land and ignoring of the boundary lines was impermissible and moved the entire parcel out of the legal nonconforming lot.
Appellants further generally relied on Duffy v. East Greenwich TownCouncil 896 A.2d 27, 37 (R.I. 2006), for the proposition that a lawful nonconforming use is a thorn in the side of the State and should not be perpetuated any longer than necessary and that the policy of zoning is to abolish nonconforming uses quickly. Appellants further relied onDuffy to state that once a continuation of a nonconforming use is interrupted by a nonconforming act, then that use forever becomes nonconforming. (Tr. June 26, 2007 at 13.)
At the hearing, Arthur noted that the Parks and La Voie cases, cited by Appellants, concerned a complex subdivision which existed before a zoning ordinance passed. Further, Arthur noted that after the ordinance was passed, the landowner submitted plans for nonconforming lots. Thus, Arthur argued, the present case is very different from those relied on by Appellants since this case has to do with one lot of *Page 9 
record which Arthur increased only in size. (Tr. June 26, 2007 at 32-33.) Additionally, Arthur argued that the Duffy case concerned a use variance, not a dimensional variance. Arthur agreed that a nonconforming use is looked upon as a thorn in Rhode Island, while demonstrating that the instant case does not concern a nonconforming use but rather a substandard lot. Id at 33. Arthur lastly argued Rhode Island case law existed for the proposition that if an ordinance is to deprive a landowner of his or her property rights, then the ordinance must be clear as to what effect will occur. Id at 31; see Earl v. Zoning Boardof Review of City of Warwick, 191 A.2d 161, 96 R.I. 321 (1963). That it would be against public policy to take away the legal non conforming lot of record "grandfather rights" because the landowner tried to add land to her lot which would make it more conforming. Id.
Before deciding, the Board received advice from the Town Solicitor. The Town Solicitor expressed the opinion that § 45-24-38 was the pertinent statue for substandard lots and the basis for the merger provisions. The Town Solicitor also advised that the Board needed to determine how the Arthur lot fell into the definition of a lot in the zoning ordinance § 82-103. Further, the Town Solicitor opined that public policy dictates that it would create an absurd result to have a landowner seek to reduce a level of nonconformity by adding land area and to then be penalized under the ordinance. Id at 37-38. The Town Solicitor also advised that the Board must determine whether the strip of land meets the definition of a lot and, if so, whether that extra parcel merged with the existing Arthur lot pursuant to the merger provision to deprive the lot of its nonconforming status. Id. at 38. *Page 10 
Mr. Ginnerty, Chairman of the Board, moved to deny the appeal on the basis that the strip of land added to the Arthur lot was not a separate deeded lot but a section of land belonging to a neighbor. He relied on Jamestown Code 982.103(65) and offered his view that the strip of land did not change the nature of the Arthur property from a preexisting nonconforming lot. Id. at 44. Mr. Wagner, another Board member, seconded the motion and some discussion ensued, led by Mr. Boren, the only Board member who did not vote to deny the appeal. Id. at 44-45.
After the oral decision at the hearing, the Board also sent out a written decision. In its written decision, the Board quoted Jamestown Code § 982.103 (65) for the definition of a lot. Based on this definition and what was presented at hearing and in the memos, the Board concluded that the administrative subdivision that added the 997 sq. ft. to the Arthur lot did not change the nature of the Arthur lot from a legal nonconforming lot, and therefore, the decision of the building inspector granting the building permit was upheld. (Admin. Decision June 27, 2007 at 1-2.)
 B Nonconforming Lot
The definition of a lot according to the Jamestown Zoning Ordinance is either
 [t]he basic development unit for determination of lot area, depth, and other dimensional regulations; or [a] parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title." Jamestown Code § 82-103(65).
This definition is identical to that of Rhode Island General Laws § 45-24-31(38). Another definition of a lot, as defined by Black's LawDictionary, is "A tract of land, esp. one having specific boundaries or being used for a given purpose." Black's Law Dictionary *Page 11 
966 (8 ed. 2004). The Rhode Island General Laws also define the two types of nonconformance: being a nonconforming use and nonconformance by dimension. Nonconformance is defined as:
 A building, structure, or parcel of land, or use thereof, lawfully existing at the time of adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment. Nonconformance is of only two (2) types:
 . . .
 (i) Nonconforming by dimension; a building, structure or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to permitted uses. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance is nonconforming by use; a building or structure containing a permitted number of dwelling units by the use regulations of the zoning ordinance, but not meeting the lot area per dwelling unit regulations, is nonconforming by dimension. Section 45-24-31 (49)(ii).
The definitions of nonconformance and nonconforming by dimension in the Jamestown Zoning Ordinance are substantially identical to that of the above definitions. Jamestown Code § 82-103(86)(b). A substandard lot of record is defined as "Any lot lawfully existing at the time of adoption or amendment of a zoning ordinance and not in conformance with the dimensional and/or area provisions of that ordinance." Section 45-24-31(59). The Jamestown Code, defining a substandard lot, adopted that definition. Section 82-103(116). Finally, § 45-24-38 describes a substandard lot of record as follows:
 Any city or town adopting or amending a zoning ordinance under this chapter shall regulate the use or uses of any single substandard lot of record or contiguous lots of record at the effective date of adoption or amendment of the *Page 12 
zoning ordinance notwithstanding the failure of that lot or those lots to meet the dimensional and/or quantitative requirements, and/or road frontage or other access requirements, applicable in the district as stated in the ordinance. Provisions may be made for the merger of contiguous unimproved, or improved and unimproved, substandard lots of record in the same ownership to create dimensionally conforming lots or to reduce the extent of dimensional nonconformance. The ordinance shall specify the standards, on a district by district basis, which determine the mergers. The standards include, but are not limited to, the availability of infrastructure, the character of the neighborhood, and the consistency with the comprehensive plan.
Courts allow for and encourage merger of contiguous lots of common ownership, especially when specifically provided for in the ordinance.See Brum v. Conley, 572 A.2d 1332 (R.I. 1990). "Realty, may, however, in such instance, be kept by, or conveyed to, diverse owners in order to preserve valid nonconforming plots." 101A CJS § 164. The treatise suggests, and the Court agrees, that if land is conveyed to a diverse owner to facilitate in the creation of a more conforming lot, this act is allowed. This conveyance and addition is not considered a merger of two lots and will not remove the legal nonconforming lot from that status.
"If the language of a zoning ordinance is clear and certain, there is nothing left for interpretation and the ordinance must be interpreted literally." Mongony v. Bevilacqua, 423 A.2d 661 at 663. However, if there is an ambiguity in the ordinance or it lacks clarity, the law states, "where doubt exists as to the legislative intention, the ordinance should be interpreted in favor of the property owner."Earl v. Zoning Bd. of Review of City of Warwick, 191 A.2d 161, 164,96 R.I. 321 (1963). Here, the Jamestown Code clearly provides that a single nonconforming lot of record exists, "where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the *Page 13 
minimum dimensions and area required by this ordinance [chapter] which was a lot of record on the effective date of the ordinance [from which this chapter is derived] may be used for a single-family dwelling." Section 82-708 (alteration in original). Accordingly, this Court finds no clear indication that a nonconforming lot of record can or cannot add land to the lot and remain a nonconforming lot of record. For the reasons stated above, this Court affirms the decision of the Board that the subject lot retained its nonconforming status is not affected by error of law.
 C Border Dispute
The Appellants also contend that the Board should have heard evidence that there existed a border dispute because the house minimally met the side setback requirements leaving "no room for error." (Tr. June 26, 2007 at 15.) Therefore, the Appellants contend, if the border was off by the three feet that the Appellants alleged, then the Board would have to reverse the granting of the building permit because the house would not meet the side setback requirements.
Arthur argued that there was never a border dispute. Arthur argued the original survey of her land placed the border where it currently is located, and then the second surveyor erroneously read the deed, and measured incorrectly, moving the border three feet. That survey is the survey that Arthur submitted when she applied for the variance, before she added the strip of land. Arthur notes that when she applied for the addition of the strip of land and the administrative subdivision, she hired a different surveyor who read the deed correctly and moved the border back three feet to its original line. The survey line matched up with old concrete fence posts as well. Arthur submitted the *Page 14 
warranty deed of Appellants which clearly states the measurements of their land in metes and bounds and confirms that the border should be where the first and third surveyor put the border. (Warranty Deed at 1.)
The Board concluded that it did not have jurisdiction to hear a border dispute. It allowed each side to make arguments and even questioned the Appellants as to whether they had an independent surveyor who would attest to the Appellant's location of the border, which they did not have. (Tr. June 26, 2007 at 17, 20.) The Board also suggested that one remedy available to the Appellants was to move for an injunction in Superior Court if they wished to entertain a border dispute. Id at 18. The Board tried to have the parties consent that there was a genuine dispute, but Arthur argued it was a "manufactured boundary dispute." Id at 22. Because the Board determined that it did not have jurisdiction to determine the border dispute, it did not entertain witness testimony as to whether there was a genuine dispute. Id at 28.
In evidence before the Board was the warranty deed of Appellants confirming the border determined by the first and third surveyors, and the administrative subdivision plan of 2005. The burden to present evidence falls on the moving party. The Appellants had no expert or independent survey ready to present to the Board or submit into evidence disputing the border evidenced by deed and surveyors.
Furthermore, Rhode Island law has made clear that a zoning board only has jurisdiction to hear and decide those enumerated matters which it has been explicitly given the power to decide. Rico Corp. v. Town ofExeter et al., 787 A.2d 1136 (R.I. 2001).
 Zoning boards are statutory bodies. Their powers are legislatively delineated. They are empowered to hear *Page 15 
appeals from the determination of administrative officers made in the enforcement of zoning laws and in addition they may authorize deviations from the comprehensive plan by granting exemptions to or variations in the application of the terms of the local zoning ordinances. * * * Notwithstanding that the enabling legislation does not permit nor the ordinance authorize any additional jurisdiction. . . . Rico, 787 A.2d at 1144 (quoting Olean v. Zoning Board of Review of Lincoln, 101 R.I. 50, 52, 220 A.2d 177, 178
(1966)).
The zoning board of review's powers are clearly delineated in § 45-24-57(1). The powers delineated therein do not include the determination of border disputes. As the determination of border disputes is not included among the Board's statutory powers, the Board has no jurisdiction to hear or decide any alleged border dispute presented to it.
Pursuant to G.L. 1956 § 8-2-13, the Superior Court has jurisdiction to hear border disputes. "The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity. . . ." Section 8-2-13. Accordingly, the Board's finding that it lacked jurisdiction to hear the dispute and declining to consider any evidence concerning a border issue was not in violation of the ordinance or statutory provisions, was not arbitrary or capricious and was not affected by error of law.
 IV Conclusion
After review of the entire record, this Court finds that the decision of the Board was not in violation of the ordinance or statutory provisions, was not arbitrary or capricious, and was not affected by error of law. Substantial rights of the Appellants have not been prejudiced. Counsel for the prevailing party shall submit the appropriate judgment for entry.
[1] The Board, in fact, not only decided it did not have jurisdiction but also continuously suggested that one of the remedies the Appellants could seek for the boundary dispute would be injunctive relief. (Tr. Feb. 27, 2007 at 12-16; Tr. Jun. 26, 2007 at 17, 18.) The Court takes judicial notice of the fact that the Appellants, at the time of the writing of this decision, have no pending boundary dispute cases in the Superior Court.
[2] At the hearing, Arthur asserted the addition fell under the merger doctrine; however, the Board did not accept Arthur's legal claim that this issue fell under the merger doctrine. (Tr. June 26, 2007 at 29-30, 42.)
[3] In the transcript, the Appellant argues that he relied on the "Rathport" treatise; however, the Court will assume he intended to cite Rathkopf on zoning as he did in his brief to this Court. *Page 1